**In re ROSS.**

[Cite as *In re Ross,* 154 Ohio App.3d 1, 2003-Ohio-4419.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020509.

Decided Aug. 22, 2003.

Geoffrey P. Damon, for appellant.

Katz, Greenberger & Norton, L.L.P., and Ross M. Evans, for appellee.

Per Curiam.

{¶ 1} Appellant, Zoraba Ross, and appellee, Angelique D. Johnson, are the father and mother of Zandria Ross. The parties were never married. The Hamilton County Juvenile Court had previously named Johnson as the child's legal custodian and residential parent and had awarded parenting time to Ross. The parties had substantial difficulties with the parenting-time schedule, which the court had designed to be flexible, since Johnson lived in Cincinnati and Ross lived in Columbus. The parties continued to litigate custody and visitation issues, including filing numerous motions for contempt.

{¶ 2} Subsequently, the court announced that it was going to implement a fixed visitation schedule to end the disputes between the parties and asked each of the parties to submit his or her own plan. Before the court could order a new visitation schedule, Ross sought the recusal of the judge hearing the case. To avoid the appearance of impropriety, the judge recused herself, and the matter was assigned to another juvenile court judge.

{¶ 3} The new judge heard both parties' objections to a prior magistrate's report, which recommended only minor changes to the previous flexible visitation schedule. The judge rejected the magistrate's recommendations, stating, "Under the circumstances of this case and the history of the visitation problems that this child has experienced, the Court must put forward a clear, strong, unequivocal parenting time order that leaves no room for individual interpretation. Unfortunately, such a parenting time schedule must be rigid and cannot adapt to common human situations. These parents have shown that they are unable to yield to changing situations, to mediate or to communicate effectively." The court then ordered a rigid parenting-time schedule. Ross has filed a timely appeal from that judgment.

{¶ 4} Ross presents four assignments of error for review. We consider the first two together. In his first assignment of error, he contends that the trial court abused its discretion by reducing his parenting time without a finding that such a reduction was in the child's best interest. In his second assignment of error, he contends that the court ignored the magistrate's factual findings and completely restructured the parenting-time schedule without considering the statutory factors set forth in R.C. 3109.051. These assignments of error are not well taken.

{¶ 5} R.C. 3109.051 governs the modification of parenting time or visitation rights. *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 706 N.E.2d 1218. It requires that court orders that address visitation be "just and reasonable." *Evans v. Evans* (July 27, 1994), 1st Dist. No. C–920914, 1994 WL 388692. In modifying visitation rights, a court must determine whether a change in the

visitation order is in the child's best interest, and it must consider the factors set forth in R.C. 3109.051(D) in making this determination. *Braatz*, supra. The trial court has broad discretion in modifying visitation rights, and a reviewing court will not reverse its decision on that issue absent an abuse of discretion. *Appleby v. Appleby* (1986), 24 Ohio St.3d 39, 24 OBR 81, 492 N.E.2d 831; *In re Allen*, 12th Dist. No. CA2002–10–238, 2003-Ohio-2548; *Evans*, supra.

{¶ 6} The record demonstrates that the juvenile court considered the statutory factors and the child's best interest when making its decision. The court considered the physical distance between the parties, the amount of time the child spent traveling between the parties' homes, the child's age and her activities, her relationship to both parties, the parties' inability to cooperate and communicate, and the number of mishaps that occurred because of that inability to communicate. The record supports the trial court's finding that "the most glaring problem with the prior order of visitation is the parents' ability and willingness to interpret and manipulate the order itself and to choose to follow the order only when it meets their purposes." This finding justified the implementation of a more rigid parenting-time schedule. Under the circumstances, we cannot conclude that the trial court's parenting-time order was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140; *Evans*, supra.

{¶ 7} Ross further contends that the trial court vindictively reduced his parenting time, a contention that the record does not support. The court recognized that Ross had been involved with the child throughout her life, that he had a strong bond with her, and that it was in the child's interest for him to have parenting time with her on a regular basis. Though the order reduced Ross's parenting time somewhat, he still enjoys substantial amounts of time with the child. Further, the reduction is the result of the necessity to reduce the child's travel time and the inconvenience of a mid-week visitation because of the child's school schedule. This reduction does not, in and of itself, render the trial court's decision an abuse of discretion.

{¶ 8} Further, the record does not demonstrate that the trial court ignored the magistrate's findings of fact. The court simply disagreed with the magistrate's proposed parenting-time schedule. In ruling on objections to a magistrate's report, "[t]he court may adopt, reject or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter itself." Juv.R. 40(E)(4)(b). The juvenile court was required to make an independent review of the magistrate's decision. The court, after reviewing the transcript of the proceedings before the magistrate, was free to disagree with the magistrate's conclusions and to enter an order it

6

found to be in the child's best interest. See *In re Etter* (1998), 134 Ohio App.3d 484, 731 N.E.2d 694; *In re Wooldridge* (Aug. 27, 1999), 1st Dist. No. C–980545, 1999 WL 650615.

{¶ 9} Under the circumstances, we cannot hold that the trial court abused its discretion in rejecting the magistrate's decision and in adopting its own parenting-time schedule. Accordingly, we overrule Ross's first and second assignments of error.

{¶ 10} In his third assignment of error, Ross argues that irregularities in the proceedings below constituted reversible error. He contends that the juvenile court should have disqualified Johnson's counsel because of an ex parte communication between her counsel and the first judge on the case and because of his prior representation of Ross. He also contends that the second judge should have recused himself from hearing the case. This assignment of error is not well taken.

{¶ 11} As to Ross's claim that the second judge should have recused himself, R.C. 2701.03 sets forth the procedure by which a party may seek the disqualification of a common pleas court judge. *State v. Ramos* (1993), 88 Ohio App.3d 394, 623 N.E.2d 1336; *State v. Hughbanks*, 1st Dist. No. C–010372, 2003-Ohio-187, 2003 WL 131937. Only the Chief Justice of the Ohio Supreme Court or his designee has the authority to pass upon the disqualification of a common pleas court judge. *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 8 O.O.3d 438, 377 N.E.2d 775; *Hughbanks*, supra. Consequently, this court is without authority to rule upon the issue of disqualification of the juvenile court. *Beer*, supra; *Ramos*, supra.

{¶ 12} As to the disqualification of Johnson's counsel, a trial court has the inherent power to regulate the practice before it and to protect the integrity of the proceedings. This power extends to overseeing the ethical conduct of the attorneys as well as the dismissal or disqualification of attorneys who cannot, or will not, comply with the Code of Professional Responsibility. *Royal Indemn. Co. v. J.C. Penney Co., Inc.* (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617; *Smith v. Cleveland Clinic Found.*, 151 Ohio App.3d 373, 2003-Ohio-286, 784 N.E.2d 158. A trial court has great discretion in supervising the conduct of members of the bar practicing before it. A court's ruling on a motion for disqualification will not be disturbed absent an abuse of discretion. *Hollis v. Hollis* (1997), 124 Ohio App.3d 481, 706 N.E.2d 798; *Musa v. Gillette Communications of Ohio, Inc.* (1994), 94 Ohio App.3d 529, 641 N.E.2d 233.

{¶ 13} Nevertheless, disqualification is a drastic measure, which the trial court should exercise only when absolutely necessary. An alleged violation of a professional-ethics rule is insufficient to require disqualification of counsel.

The moving party bears the burden to prove the need for disqualifying counsel. *Hollis*, supra; *Jones v. Am. Employers Ins. Co.* (1995), 106 Ohio App.3d 636, 666 N.E.2d 1152; *Musa*, supra.

{¶ 14} Ross contends that there was "a prior exchange of attorney-client privileged communications" between him and Johnson's attorney. He testified that he had contacted Johnson's attorney about possibly representing him at the start of the custody case, although he ultimately decided not to hire him. He never specified what privileged information was exchanged. He claimed only that the attorney had told him that "he knew all the judges and he knew how to get around the system." The attorney testified that Ross did contact him but that he was never a client and that he had never received any privileged information from Ross. Under the circumstances, Ross failed to meet his burden to show the necessity of disqualifying counsel.

{¶ 15} Ross also claimed that Johnson's attorney had inappropriate ex parte communications with the judge. The record shows that, after one hearing, Johnson's attorney and the first judge on the case did have a conversation without Ross or his attorney present. When Ross filed his motion for disqualification, the judge explained on the record that the conversation was inappropriate and that it was her fault, since she had initiated it. She recounted the substance of the conversation, which consisted mainly of both her and the attorney expressing regret that the parties could not cooperate. She overruled Ross's motion to disqualify the attorney on that basis, but she did recuse herself, since Ross had the impression that he could not get a fair hearing from her. Even if an ethical violation occurred, Ross has not demonstrated that he was prejudiced by the ex parte communication. *Smith*, supra.

{¶ 16} These events were not sufficient to require the drastic measure of disqualification. They did not involve the sort of egregious misconduct necessary to deny Johnson the right to have counsel of her choice. See *Smith*, supra; *Hollis*, supra; *Musa*, supra. The trial court's decision to deny Ross's motion for disqualification of Johnson's attorney was not so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. See *Blakemore*, supra. Accordingly, we overrule his third assignment of error.

{¶ 17} In his fourth assignment of error, Ross contends that the trial court erred in conducting an ex parte hearing at which he was not present and could not refute Johnson's allegations. The record shows that the hearings to which he refers were emergency hearings on Johnson's two petitions for writs of habeas corpus, which sought the return of the child when Ross had allegedly failed to return her after his visitation period. The trial court granted both of these petitions.

{¶ 18} A writ of habeas corpus is an appropriate remedy for the illegal detention of a child. See *Holloway v. Clermont Cty. Dept. of Human Serv.* (1997), 80 Ohio St.3d 128, 684 N.E.2d 1217; *In re Black* (1973), 36 Ohio St.2d 124, 65 O.O.2d 308, 304 N.E.2d 394; *State ex rel. Spitler v. Seiber* (1968), 16 Ohio St.2d 117, 45 O.O.2d 463, 243 N.E.2d 65. It is intended to be a prompt and speedy method of gaining possession of a child who might be illegally detained. *In re Padilla* (Jan. 16, 1987), 6th Dist. No. L–86–019, 1987 WL 5489. R.C. Chapter 2725 prescribes a summary procedure for bringing a habeas corpus action. *Gaskins v. Shiplevy* (1996), 76 Ohio St.3d 380, 667 N.E.2d 1194. The hearing on the writ is summary in nature and does not constitute a trial on the merits. *In re Terry* (1988), 51 Ohio App.3d 133, 554 N.E.2d 1365. After reviewing the record, we cannot say that holding an ex parte hearing under the circumstances of this case was error, where the juvenile court had extensive knowledge of the proceedings and could determine the validity of the writ from the face of the petition and the parenting-time schedule. See *Gaskins,* supra. Nevertheless, we do not reach that issue.

{¶ 19} A writ of habeas corpus is a collateral remedy, independent of the legal proceeding under which the detention is sought to be justified. *In re Cattell* (1945), 146 Ohio St. 112, 32 O.O. 43, 64 N.E.2d 416; *Ruther v. Sweeney* (App.1956), 75 Ohio Law Abs. 385, 137 N.E.2d 292. An appellate court reviews a decision in a habeas corpus case in the same way it would review a decision in any other case. R.C. 2725.26; *Horton v. Collins* (1992), 83 Ohio App.3d 287, 614 N.E.2d 1077; *Ruther,* supra.

{¶ 20} The granting of a writ of habeas corpus affects a substantial right in the action and, in effect, determines that action and prevents a judgment. Consequently, the granting of a writ of habeas corpus is a final, appealable order within the meaning of R.C. 2505.02(B). Since a habeas corpus proceeding is an independent and separate action, Ross should have appealed the granting of each of the two writs within 30 days of the judgment. See App.R. 4(A). Since Ross did not file a notice of appeal from those judgments within 30 days, we are without jurisdiction to review issues related to the writs. See *Bosco v. Euclid* (1974), 38 Ohio App.2d 40, 67 O.O.2d 209, 311 N.E.2d 870; *In re Harris,* 1st Dist. No. C–020512, 2003-Ohio-672, 2003 WL 327996; *In re Brazile,* 1st Dist. No. C–010694, 2002-Ohio-6652, 2002 WL 31728896. Consequently, we overrule Ross's fourth assignment of error.

{¶ 21} We find no basis for reversing the trial court's judgment in Ross's four assignments of error. Accordingly, we affirm the trial court's judgment.

Judgment affirmed.

DOAN, P.J., PAINTER and WINKLER, JJ., concur.