OPINION
{¶ 1} This is an expedited appeal of an order granting full visitation rights of minor child Kaydi Jo Hoppel to her natural father, Appellee John W. Hoppel. Appellee was married to Appellant Rhonda Hoppel, and Kaydi Jo was the only child of the marriage. The parties filed for divorce in 1997 in the Columbiana County Court of Common Pleas. While the divorce was pending, Appellee was convicted of sexual battery against minor child Stacey Owens, Rhonda's daughter from a previous marriage. After the divorce was finalized, Appellee was granted some restricted visitation rights. On July 31, 2003, Appellee filed a motion to receive full standard visitation rights pursuant to Columbiana County Loc.R. 9.4. The trial court granted Appellee's motion on September 19, 2003. Appellant argues on appeal that the trial court did not properly take Appellee's crime against Stacey or his status as a sexual offender into account when granting full unsupervised visitation rights to Appellee. We agree with Appellant's argument, and for the reasons that follow we partially modify and partially reverse the judgment of the Columbiana County Court of Common Pleas.
 PROCEDURAL HISTORY {¶ 2} Appellee filed for divorce on August 4, 1997. On April 30, 1998, Appellee was convicted and sentenced to two years in prison for sexual battery against minor child Stacey Owens in violation of R.C. 2907.03(A)(5), a third degree felony. Appellee was subsequently designated as a sexually oriented offender under R.C. 2950.09.
 {¶ 3} The parties were granted their divorce on September 15, 1998. The court named Mrs. Hoppel as the residential parent and legal guardian of Kaydi Jo.
 {¶ 4} Appellee's parents, David and Bonnie Hoppel, were granted grandparents' visitation rights on December 9, 1998. The grandparents were ordered not to facilitate visitation between Appellee and Kaydi Jo while he was in prison.
 {¶ 5} In February 1999, Appellee filed a motion to establish visitation rights with Kaydi Jo during the period of his incarceration. On May 28, 1999, Appellee was granted telephone contact twice per month.
 {¶ 6} On September 3, 1999, David and Bonnie Hoppel filed a contempt motion against Mrs. Hoppel because she refused to allow them to exercise some of their visitation rights. On October 13, 1999, the trial court allowed visitation to occur between Appellee and Kaydi Jo at the Madison Correctional Institution where Appellee was incarcerated.
 {¶ 7} On May 16, 2000, a magistrate's order allowed Appellee (who was apparently out of prison by this time) to visit with Kaydi Jo during the grandparents' visitation hours, but forbade Appellee to exercise overnight visitation. The pending contempt motion against Appellant was also dismissed because Mrs. Hoppel was now allowing the grandparents to exercise their full visitation rights. The court's order did not specifically state that Appellee's visitation was supervised visitation.
 {¶ 8} On July 9, 2001, Appellee and his parents filed another contempt motion against Appellant for failure to facilitate visitation rights. On July 9, 2001, Appellant also filed a "Motion for Immediate Possession" of Kaydi Jo because Appellee's parents had allegedly failed to return Kaydi Jo at an agreed upon time. The court granted Mr. Hoppel's motion on July 13, 2001.
 {¶ 9} It should be noted that Mrs. Hoppel changed counsel many times during these proceedings, and had acted pro se for part of the time. Appellant had no representation at the May 3, 2000, hearing in which she apparently agreed that Appellee could visit with Kaydi Jo during the grandparents' visitation hours.
 {¶ 10} Appellee and his parents filed additional contempt motions on June 25, July 8, and July 26, 2002. On July 17, 2002, Mrs. Hoppel filed a contempt motion against the grandparents and requested the court to terminate their visitation rights.
 {¶ 11} Appellant and her attorney failed to appear at an October 11, 2002, contempt hearing, and it was continued to November 25, 2002. Appellant's attorney withdrew from representation a few days prior to the continued hearing. Appellant appeared pro se at the hearing. The trial court found that there were no restrictions on Appellee's visitation other than the terms listed in the May 16, 2000, order. The court held Mrs. Hoppel in contempt, sentenced her to 30 days in jail, and stayed the sentence on the condition that she abide by the visitation orders. The court found no evidence that Kaydi Jo would be at risk from the terms of the visitation orders. There was no discussion of the best interests of the child in the court's order.
 {¶ 12} On July 31, 2003, Appellee and his parents filed a motion seeking the court to modify visitation to allow Appellee to have full visitation rights pursuant to Columbiana County Loc.R. 9.4. Appellant appeared pro se at the hearing on the motion, which took place on August 25, 2003. Appellee's mother, father, and current wife testified in favor of granting full visitation rights. Appellant did not call any witnesses and failed to engage in any significant cross-examination of Appellee's witnesses. She did express her profound frustration and confusion over the court's refusal to recognize the significance of Appellee's conviction for sexual battery against Mrs. Hoppel's daughter, Stacey.
 {¶ 13} On September 19, 2003, the trial court filed its judgment. The court acknowledged that Appellee was convicted of a sexual battery against Appellant's minor daughter Stacey Owens; that Stacey received a $200,000 civil judgment against Appellee because of the sexual battery; and that Stacey was Kaydi Jo's sister. Nevertheless, the trial judge found that Kaydi Jo would be at no risk of harm in having full unsupervised companionship with Appellee. The court apparently found it very significant that Mr. Hoppel had not previously sexually assaulted Kaydi Jo, but rather, had committed a sexual battery only against Kaydi Jo's sister. The court then granted full unsupervised companionship rights to Appellee according to Uniform Local Companionship Plan Rule 9.4.
 {¶ 14} Appellant filed a stay of execution of the judgment on October 17, 2003, which was denied by the trial court. She filed a timely appeal to this Court on the same day. Mrs. Hoppel requested a stay of execution from this Court, which we granted in modified form on December 31, 2003, allowing Appellee to have only supervised visitation with Kaydi Jo in the presence of his wife, Julie Hoppel. We notified the parties that this was an expedited appeal. Appellant filed a timely brief in this appeal. Appellee filed his brief well beyond the time allowed by App.R. 18(A), and never requested an extension of time to file his brief. Due to Appellee's flagrant disregard of our December 31, 2003, journal entry and the Rules of Appellate Procedure, we may not consider Appellee's brief in our analysis.
 STANDARD OF REVIEW {¶ 15} A trial court's decision concerning visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028. An abuse of discretion implies an attitude that is unreasonable, arbitrary or unconscionable. Id. A trial court's discretion in visitation matters, though, is not unfettered. "In modifying visitation rights, a court must determine whether a change in the visitation order is in the child's best interest, and it must consider the factors set forth in R.C. 3109.051(D) in making this determination." In re Ross, 154 Ohio App.3d 1,2003-Ohio-4419, 796 N.E.2d 6, ¶ 5. In order to further the child's best interest, the trial court has the discretion to limit or restrict visitation rights. Jannetti v. Nichol (May 12, 2000), 7th Dist. No. 97-CA-239. "This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." Id.
 ASSIGNMENT OF ERROR {¶ 16} Appellant's sole assignment of error in this appeal states:
 {¶ 17} "The trial court's order granting uniform local companionship to a sexually oriented offender frustrates the intent of the statutory scheme designed to protect potential victims of sexually oriented offenders."
 {¶ 18} Appellant argues that Appellee's status as a sexually oriented offender should, in and of itself, have prevented the trial court from granting full unsupervised visitation rights to Appellee. Appellant points to the purposes and requirements of R.C. Chapter 2950 in support. R.C. Chapter 2950 deals with the classification and registration of sexual offenders, and includes the state legislature's purposes in enacting the statute. For example, former R.C. 2950.02(B) stated:
 {¶ 19} "The general assembly hereby declares that, in providing in this chapter for registration regarding sexual predators, habitual sex offenders, and offenders * * * who have committed sexually oriented offenses * * * it is the general assembly's intent to protect the safety and general welfare of the people of this state."
 {¶ 20} Appellant argues that if R.C. Chapter 2950 declares sexually oriented offenders to be a particular danger to the general population of Ohio, that such offenders must necessarily be a danger to the household and family members of the victims of the sexually oriented offenses. In the instant case, the victim of Appellee's crime was the sister of Kaydi Jo. Appellee committed the offense when the victim was a minor, and at the present time, Kaydi Jo is also a minor. Appellee served a prison term for the felony, and was in prison during the divorce proceedings. Appellant considers these facts as proof that Appellee's unsupervised visitation would be dangerous to Kaydi Jo. Appellant acknowledges that the registrations and notification requirements of R.C. Chapter 2950 are less vigorous for a sexually oriented offender than for habitual sexual offenders or sexual predators. Nevertheless, Appellant concludes that even sexually oriented offenders are a danger to the general public, and even more so with respect to Kaydi Jo because of her close relationship to the victim of Appellee's crime.
 {¶ 21} A few excerpts from the August 25, 2003, visitation hearing illustrate the trial judge's reasoning in granting full visitation rights to Appellee:
 {¶ 22} "MS. HOPPEL: * * * I just don't understand. I mean, you know, I take care of her, you know, I'm just trying to protect my daughter and that's just way too much visitation.
 {¶ 23} "THE COURT: Ma'am, do you have any evidence though that your daughter would be at risk at all if she were in the company of her father overnight? I mean do you have any evidence to that effect? I mean, do you have anything to show me that she lives in fear or that he [Mr. Hoppel] has been involved in other activities that would involve child abuse, that harm is likely to come to your child if I allow companionship as is being requested here?
 {¶ 24} "MS. HOPPEL: It's already happened once and I just don't want it to happen —
 {¶ 25} "THE COURT: With this child it's happened once.
 {¶ 26} "MS. HOPPEL: No, with my daughter, my older daughter.
 {¶ 27} "THE COURT: Okay, now because a person goes out and robs a bank, does that mean that every bank in America is at risk?" (Tr., pp. 50-51.)
 {¶ 28} Appellant contends that the trial judge should not have belittled the fact that Appellee had committed a sexual battery against Kaydi Jo's sister, and should not have shifted the burden of proof to Appellant to show that there would be particularized harm to Kaydi Jo if full unsupervised visitation rights were granted. Appellant alleges that the trial court ignored at least two aspects of R.C. 3109.051(D), which sets forth the factors a trial court must consider when determining visitation rights. R.C. 3109.051(D)(7) requires the court to consider the health and safety of the child. R.C. 3109.051(D)(11) requires the court to consider whether either parent has been convicted of a crime that resulted in a child becoming an abused child. Appellant concludes that the trial court ignored both of these provisions and that the visitation order should be reversed.
 {¶ 29} We agree with Appellant that the trial court appeared to be applying some type of particularized harm standard in making his decision, rather than applying the standards and factors set forth in R.C. 3109.051. A court's determination of a request to modify visitation rights is governed by R.C. 3109.051.Braatz v. Braatz (1999), 85 Ohio St.3d 40, 44, 706 N.E.2d 1218. According to Braatz, "when a party requests a change in visitation, the trial court must consider the factors set forth in R.C. 3109.051(D) and then determine visitation that is in the best interest of the child." Id. at 45. The burden of proof always rests with the party requesting a modification of visitation rights. Rohrbaugh v. Rohrbaugh (2000),136 Ohio App.3d 599, 605, 737 N.E.2d 551 (7th District Court of Appeals).
 {¶ 30} R.C. 3109.051(D) lists sixteen factors that the trial court must consider when granting or modifying parental visitation rights. A crucial factor in this appeal is found in R.C 3109.051(D)(11):
 {¶ 31} "(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child * * *;"
 {¶ 32} R.C. 3109.051(N)(1) states:
 {¶ 33} "(N) As used in this section:
 {¶ 34} "(1) `Abused child' has the same meaning as in section2151.031 of the Revised Code * * *."
 {¶ 35} R.C. 2151.031(A) defines "abused child" in this way:
 {¶ 36} "As used in this chapter, an `abused child' includes any child who:
 {¶ 37} "(A) Is the victim of `sexual activity' as defined under Chapter 2907. of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child[.]"
 {¶ 38} Appellee was convicted of sexual battery in violation of R.C. 2907.03. The victim of the crime, Stacey Owens, is considered to be an abused child according to the aforementioned definitions. Seeing that Appellee was convicted of a crime that resulted in a child becoming an abused child, the trial court was required by R.C. 3109.051(D)(11) to take this conviction into account in its decision regarding Appellee's visitation request. There is no further requirement in R.C. 3109.051(D) that the crime must have been committed against the child whom the parent wishes to visit. There is no further requirement that the residential parent prove that the crime might result in particularized harm to the child whom the non-residential parent wishes to visit. The crime itself is a factor weighing against visitation, and the fact that the victim of the crime in this case was Kaydi Jo's sister would undoubtedly elevate the importance of this factor among the list of factors found in R.C.3109.051(D).
 {¶ 39} We also agree that Appellee's crime automatically implicates R.C. 3109.051(D)(7), which states:
 {¶ 40} "(D) In determining whether to grant parenting time to a parent * * * the court shall consider * * *:
 {¶ 41} "* * *
 {¶ 42} "(7) The health and safety of the child;"
 {¶ 43} As pointed out in Appellant's argument above, the Ohio legislature has recognized that sexual offenders present a particular safety concern in this state, and R.C. Chapter 2950 is a partial response to that concern. Although Appellee's sexual offense is a concern for the general public of this state, it is much more of a concern to the parties involved in the current visitation dispute. The trial court should have considered Kaydi Jo's health and safety particularly at risk merely from the fact that the victim of Mr. Hoppel's sexual crime was his stepdaughter; her sister.
 {¶ 44} Although it is difficult to understand the trial judge's reasoning in this case, it is possible that he treated this case as if it involved the complete denial of all visitation rights to a natural parent. It is generally agreed that, "[a] noncustodial parent's right of visitation with his children is a natural right and should be denied only under extraordinary circumstances[.]" Pettry v. Pettry (1984), 20 Ohio App.3d 350,486 N.E.2d 213, paragraph one of the syllabus. In this situation, the burden of proof shifts to the custodial parent to prove that an extraordinary circumstance exists that would justify denying all visitation rights. Id. Pettry identified two extraordinary circumstances that would qualify: (1) if the noncustodial parent was unfit; or (2) if visitation would cause harm to the child. Another court has held that it would be an extraordinary circumstance if the noncustodial parent were imprisoned for a term of years for a crime of violence. In re Hall (1989),65 Ohio App.3d 88, 90, 582 N.E.2d 1055. The examples listed inPettry and Hall are not meant to provide an exclusive list of possible extraordinary circumstances. Once the custodial parent proves the existence of an extraordinary circumstance, the burden shifts back to the noncustodial parent to prove that any visitation would be in the best interests of the child. Id.
 {¶ 45} Even if this were a case of the complete denial of visitation rights to Appellee (which it is not), it is clear that Appellee's recent conviction for a sexual battery against Kaydi Jo's sister would constitute an extraordinary circumstance as set forth in Pettry and Hall. The burden of proof would have shifted back to Appellee to overcome this extraordinary circumstance. The record reflects that the trial judge, however, placed the burden of proof on Appellant to prove that Kaydi Jo would suffer specific harm from having full unsupervised visitation with Appellee, and to prove what that harm would be. If the trial judge was attempting to apply the Pettry standard in this case, it was not applied correctly. At any rate, the instant appeal does not involve a request to deny all visitation rights to Mr. Hoppel, and the Pettry standard should not have been used.
 {¶ 46} It is clear from the record that the trial court did not correctly apply all the factors listed in R.C. 3109.051(D), and that he impermissibly shifted the burden of proof to Appellant to prove a factor that was not required by R.C.3109.051(D). The trial court acknowledged that Appellee had been convicted of sexual battery against Kaydi Jo's sister, and then seemed to ignore that evidence. Although it is obvious that Appellant did a poor job of representing herself at the visitation hearing, the trial court cannot use that as a reason to avoid applying all the factors in R.C. 3109.051(D) or as a reason for ignoring the best interests of the child.
 {¶ 47} We find it difficult to conceive of any set of circumstances in which it would be appropriate to grant Appellee completely unsupervised visitation in this case. The trial court's decision might be somewhat more understandable had Appellee presented clear and convincing expert testimony addressing the issues we have mentioned above. The trial court's decision might have been more understandable if a guardian ad litem had recommended unsupervised visitation. The trial court certainly had the power to appoint a guardian ad litem in this case. See Civ.R. 75(B)(2). It is curious that the trial court did not appoint a guardian ad litem when he perceived that the residential parent was not adequately protecting the child's best interests, and when he clearly knew that the other parent had recently been convicted of a sexual battery against his own stepdaughter. We conclude that the trial court's judgment in this case was an abuse of discretion, and we sustain Appellant's assignment of error.
 {¶ 48} The September 19, 2003, judgment of the Columbiana County Court of Common Pleas is reversed in part, sustained in part as follows:
 {¶ 49} 1. The order that John W. Hoppel shall have companionship with his minor child Kaydi Jo Hoppel in accordance with Uniform Local Companionship Plan Rule 9.4 IS REVERSED.
 {¶ 50} 2. The order that John W. Hoppel shall have weekday parenting time with Kaydi Jo Hoppel from 6:00 p.m. until 9:00 p.m. and on each Tuesday and Thursday from 6:00 p.m. until 9:00 p.m. following the weekends he does not have companionship IS REVERSED, except as established by companionship orders that were in effect prior to the September 19, 2003, judgment entry.
 {¶ 51} 3. The order that John W. Hoppel shall have telephone contact with Kaydi Jo Hoppel on the Wednesdays he does not have companionship IS REVERSED, except as established by companionship orders that were in effect prior to the September 19, 2003, judgment entry.
 {¶ 52} 4. The order that telephone contact may be initiated by Julie Hoppel IS SUSTAINED.
 {¶ 53} 5. The order that Julie Hoppel shall be permitted to transport Kaydi Jo Hoppel to and from the companionship period IS SUSTAINED.
 {¶ 54} 6. The order that Rhonda Hoppel shall have telephone contact with Kaydi Jo Hoppel at 6:30 p.m. on the Wednesday that John W. Hoppel has companionship with his daughter IS REVERSED, except as established by companionship orders that were in effect prior to the September 19, 2003, judgment entry.
 {¶ 55} 7. The order that the Columbiana County Court of Common Pleas will continue to stay the imposition of the jail sentence against Rhonda Hoppel but reserves jurisdiction to impose said sentence and other sanctions as contained in the Order of December 3, 2002, pending further review, IS SUSTAINED.
 {¶ 56} 8. The order terminating the previous Order of Companionship in favor of the paternal grandparents, David and Bonnie Hoppel, IS REVERSED. The paternal grandparents shall be permitted to have visitation in accordance with the most recent visitation order prior to September 19, 2003.
 {¶ 57} The September 19, 2003, judgment entry IS FURTHER MODIFIED by the addition of the following language:
 {¶ 58} "It is ordered that all visitation between John W. Hoppel and his minor child, Kaydi Jo Hoppel, be supervised visitation in the presence of Julie Hoppel (the wife of John W. Hoppel), or David and Bonnie Hoppel (the paternal grandparents of Kaydi Jo Hoppel). This order shall remain in effect except as modified by further order of the Columbiana County Court of Common Pleas."
Donofrio and DeGenaro, JJ., concur.