OPINION
{¶ 1} Pro se Appellant Rhonda L. Hoppel has filed an appeal in a child visitation matter that has come to us on appeal once before. In the previous appeal, Rhonda successfully argued that the Columbiana County Court of Common Pleas should not have permitted Appellee John W. Hoppel to have unsupervised visitation with Kaydi Jo Hoppel, when John had recently been convicted of a sexual battery against another of Rhonda's daughters. Hoppel v. Hoppel, 7th Dist. No. 03 CO 56, 2004-Ohio-1574. Sometime after the case was remanded to the trial court, Rhonda notified the court that she and Kaydi Jo were moving to Louisiana. The case was assigned to a magistrate who did not have any prior association with the case. The magistrate held a hearing to modify visitation, and there is no indication in the record that Rhonda was notified of the hearing. The magistrate and the trial court granted John a number of significant visitation rights, including full visitation for one month during the summer. Just as in the earlier appeal, the trial court seems to have disregarded John's conviction for sexual battery and granted full unrestricted visitation without the child's interests being represented at the hearing. John has not filed a brief in this appeal, and the errors that Rhonda has alleged on appeal are apparent from the record. The judgment entry modifying visitation is hereby vacated, and the case remanded to the trial court for further proceedings. *Page 2 
 HISTORY OF THE CASE {¶ 2} This has been a particularly complicated case; the trial court's docket of activity alone consists of 55 pages. It is necessary to go into some detail, though, of the history of this matter in order to make sense of the issues on appeal.
 {¶ 3} John filed for divorce from Rhonda on August 4, 1997, in the Columbiana County Court of Common Pleas. There was one child born of the marriage, Kaydi Jo, born on August 10, 1993.
 {¶ 4} On April 30, 1998, John was convicted of one count of sexual battery, R.C. 2907.03(A)(5), a third degree felony. The victim of the crime was Stacey Owens, Rhonda's daughter from a previous marriage. John was sentenced to two years in prison, and was designated as a sexually oriented offender under R.C. 2950.09.
 {¶ 5} The parties were divorced on September 15, 1998. The court named Rhonda Hoppel as the residential parent and legal guardian of Kaydi Jo.
 {¶ 6} John's parents, David and Bonnie Hoppel, were granted grandparents' visitation rights on December 9, 1998. The grandparents were ordered not to facilitate visitation between John and Kaydi Jo while he was in prison.
 {¶ 7} In February of 1999, John filed a motion to establish visitation rights with Kaydi Jo during the period of his incarceration. On May 28, 1999, John was granted telephone contact twice per month.
 {¶ 8} On September 3, 1999, David and Bonnie Hoppel filed a contempt motion against Rhonda for her refusal to cooperate with the visitation order. On *Page 3 
October 13, 1999, the court allowed some visitation to occur at the Madison Correctional Institution where John was incarcerated.
 {¶ 9} On May 16, 2000, a magistrate's order allowed John (who was apparently out of prison by this time) to visit with Kaydi Jo during the grandparents' visitation hours, but forbade John to exercise overnight visitation. The contempt motion against Rhonda was also dismissed because she was now in compliance with prior visitation orders.
 {¶ 10} On July 9, 2001, John and his parents filed another contempt motion against Rhonda for failure to facilitate visitation rights. On July 9, 2001, Rhonda filed a rebuttal "Motion for Immediate Possession" of Kaydi Jo because John's parents had allegedly failed to return Kaydi Jo at an agreed upon time. The court granted Rhonda's motion on July 13, 2001.
 {¶ 11} It should be noted that Rhonda changed counsel many times during these proceedings, and also acted pro se some of the time. Rhonda had no representation at the May 3, 2000, hearing in which she apparently agreed that John could visit with Kaydi Jo during the grandparents' visitation hours.
 {¶ 12} John and his parents filed additional contempt motions on June 25, July 8, and July 26, 2002. On July 17, 2002, Rhonda filed a contempt motion against the grandparents and requested the court to terminate grandparents' visitation rights.
 {¶ 13} Rhonda and her attorney failed to appear at an October 11, 2002, contempt hearing, and it was continued to November 25, 2002. Rhonda's attorney withdrew from representation a few days prior to the continued hearing. Rhonda *Page 4 
appeared pro se at the hearing. The trial court found that there were no restrictions on John's visitation other than the terms listed in the May 16, 2000, order. The court held Rhonda in contempt, sentenced her to 30 days in jail, and stayed the sentence on the condition that she abide by the visitation orders. The court found no evidence that Kaydi Jo would be at risk from the terms of the visitation orders. The court did not discuss the best interests of the child.
 {¶ 14} On July 31, 2003, John and his parents asked the court to modify visitation to allow John to have full visitation rights pursuant to Columbiana County Loc.R. 9.4. Rhonda appeared pro se at the hearing on the motion, which took place on August 25, 2003. John's mother, father, and current wife testified in favor of granting full visitation rights. Rhonda did not call any witnesses and, unsurprisingly failed to engage in any significant cross-examination of John's witnesses.
 {¶ 15} On September 19, 2003, the trial court filed its judgment. The court acknowledged that John had committed a sex crime, sexual battery, against his stepdaughter Stacey Owens, and noted that Stacey received a $200,000 civil judgment against John because of the sexual assault. Nevertheless, the trial court determined that Kaydi Jo would be at no risk of harm in having full companionship with John. The court relied on the fact that the sexual assault did not occur against Kaydi Jo herself. The court granted full companionship rights to John according to Uniform Local Companionship Plan Rule 9.4. *Page 5 
 {¶ 16} We reversed many aspects of the trial court ruling, particularly noting the significance of John's sexual assault conviction and the lack of any discussion of the best interests of the child. We held:
 {¶ 17} "John [John W. Hoppel] was convicted of sexual battery in violation of R.C. 2907.03. The victim of the crime, Stacey Owens, is considered to be an abused child according to the aforementioned definitions. Seeing that John was convicted of a crime that resulted in a child becoming an abused child, the trial court was required by R.C.3109.051(D)(11) to take this conviction into account in its decision regarding John's visitation request. There is no further requirement in R.C. 3109.051(D) that the crime must have been committed against the child whom the parent wishes to visit. There is no further requirement that the residential parent prove that the crime might result in particularized harm to the child whom the non-residential parent wishes to visit. The crime itself is a factor weighing against visitation, and the fact that the victim of the crime in this case was Kaydi Jo's sister would undoubtedly elevate the importance of this factor among the list of factors found in R.C. 3109.051(D)." Hoppel, supra, at ¶ 38.
 {¶ 18} Our prior Opinion also stated:
 {¶ 19} "We find it difficult to conceive of any set of circumstances in which it would be appropriate to grant John completely unsupervised visitation in this case. The trial court's decision might be somewhat more understandable had John presented clear and convincing expert testimony addressing the issues we have mentioned above. The trial court's decision might have been more understandable if *Page 6 
a guardian ad litem had recommended unsupervised visitation. The trial court certainly had the power to appoint a guardian ad litem in this case. See Civ.R. 75(B)(2). It is curious that the trial court did not appoint a guardian ad litem when he perceived that the residential parent was not adequately protecting the child's best interests, and when he clearly knew that the other parent had recently been convicted of a sexual battery against his own stepdaughter." Id. at ¶ 47.
 {¶ 20} In the same Hoppel decision, we denied John the right to standard visitation, and prohibited him from having unsupervised visitation with Kaydi Jo. We restored the visitation rights of David and Bonnie Hoppel, the paternal grandparents of Kaydi Jo, and ordered that all visitation between John Hoppel and Kaydi Jo be supervised either by Bonnie and David Hoppel, or by John's wife, Julie Hoppel.
 {¶ 21} After the case was remanded to the trial court, custody and visitation did not come under review again until Rhonda delivered a handwritten letter to the court on February 24, 2006, stating that she and Kaydi Jo were moving to Baton Rouge, Louisiana. The letter contained a temporary address for Rhonda in Louisiana.
 {¶ 22} The court set a magistrate's hearing for March 16, 2006, to discuss what was interpreted as a notice of intent to relocate. A magistrate was assigned to the case who had not been involved in any other prior proceedings. (4/18/06 Tr., p. 6.) The court's docket indicates that notice of the hearing was sent to John Hoppel. The record is somewhat confusing as to whether Rhonda was notified of the hearing. There is a document in the trial court's file, signed by the court administrator, stating *Page 7 
that a hearing was set for March 16, 2006, and there is a "CC" notation that a file copy was sent to both John and Rhonda Hoppel. According to the court's journal of activity, though, a letter was only sent to John Hoppel. Notice of the March 16, 2006, hearing is largely irrelevant, because the hearing did not take place on March 16, 2006, but rather, on April 18, 2006. There is nothing in the record indicating how anyone was notified of the April 18, 2006, hearing. John Hoppel appeared at the hearing pro se, but Rhonda was not represented at the hearing, either pro se or by counsel. Bonnie Hoppel, the paternal grandmother, also attended the hearing pro se.
 {¶ 23} There was no discussion at the hearing of John's prior sexual assault conviction, or the May 26, 2004, Opinion by this Court. The magistrate stated that she did not have a complete record of the case because she claimed that some of it remained with the court of appeals file. (4/18/06 Tr., p. 7.) The magistrate referred to John's standard visitation rights throughout the hearing, despite the fact that he did not have standard visitation rights. The magistrate accepted John's statement that Rhonda had already moved to Louisiana, and the magistrate stated that, "she's not here to object so we're going to go ahead and make some orders." (4/18/06 Tr., p. 11.) There was no discussion about appointing a guardian ad litem for Kaydi Jo, which was recommended in our earlier Opinion. The magistrate then modified the visitation schedule according to the wishes of John and his mother.
 {¶ 24} The one-page magistrate's decision of April 25, 2006, contains practically no information about the prior history of the case, fails to mention our prior *Page 8 
ruling, and does not discuss which best interests factors were considered in modifying the prior visitation orders. The magistrate granted John standard visitation rights under Local Rule 9.41, along with a four-week period in the summer, one week at Christmas, and Kaydi Jo's entire spring break period. The court also divided the costs of transportation. The trial judge signed the magistrate's decision as the court's final order, without modification.
 {¶ 25} Rhonda filed a motion for stay of execution of the judgment on May 23, 2006, and filed an appeal to this Court on the same day. On May 25, the trial court overruled the motion for stay of execution because Rhonda had not filed objections to the magistrate's decision, which the court concluded was a waiver of her right to appeal.
 {¶ 26} The only brief filed in this appeal is Rhonda's. App.R. 18(C) states: "If an appellee fails to file the appellee's brief within the time provided by this rule, or within the time as extended, the appellee will not be heard at oral argument except by permission of the court upon a showing of good cause submitted in writing prior to argument; and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."
 {¶ 27} Rhonda has attempted to add some documents to the record that further establish that she was not sent any notice of the April 18, 2006, hearing, but these documents were not part of the trial court record and are not properly before us *Page 9 
on appeal. The supplemental documents are not crucial to Rhonda's argument because the record reflects that she did not receive proper notice of the hearing.
 ASSIGNMENTS OF ERROR {¶ 28} "THE TRIAL COURT'S NOTICE OF A HEARING ON MARCH 16, 2006 AND IT'S [sic] RESCHEDULED DATE OF APRIL 18, 2006 BY THE FILING OF A NOTICE OF HEARING, MARCH 16, 2006 WITH THE CLERK OF COURTS DOES NOT ACCOMPLISH SERVICE AS REQUIRED BY CIV.R. 5(B) and UNIFORM LOCAL COMPANIONSHIP RULE 9.4."
 {¶ 29} "THE TRIAL COURT'S ORDER GRANTING UNIFORM LONG DISTANCE COMPANIONSHIP TO A SEXUALLY ORIENTED OFFENDER FRUSTRATES THE INTENT OF THE STATUTORY SCHEME DESIGNED TO PROTECT POTENTIAL VICTIMS OF SEXUALLY ORIENTED OFFENDERS."
 {¶ 30} Rhonda's argument is very straightforward. She did not receive notice of the hearing that significantly altered the visitation plan that was established in our prior Hoppel Opinion. She contends that her due process rights were violated by the lack of notice, and as a result, a man convicted of sexually assaulting one of her children was permitted to have extensive visitation rights with another daughter, Kaydi Jo. Rhonda argues that the hearing should not have taken place in her absence or without some type of notice, and that the trial court's visitation order should be vacated. Rhonda's argument is well-taken.
 {¶ 31} A trial court's decision concerning visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion.Booth v. Booth (1989), 44 *Page 10 
Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion implies an attitude that is unreasonable, arbitrary or unconscionable. Id. A trial court's discretion in visitation matters, though, is not unfettered. "In modifying visitation rights, a court must determine whether a change in the visitation order is in the child's best interest, and it must consider the factors set forth in R.C. 3109.051(D) in making this determination." In re Ross, 154 Ohio App.3d 1, 2003-Ohio-4419,796 N.E.2d 6, ¶ 5.
 {¶ 32} There is no Appellee's brief in this case, and Rhonda has established that she was denied due process because she was not informed of either the original hearing date or the apparently modified hearing date. Although it is true, as noted by the trial court, that Rhonda did not file anything labeled as an "objection" to the magistrate's decision, it does not appear that a party needs to file an objection when the court fails to give notice of a modification of visitation hearing. The trial court was relying on Civ.R. 53(D)(3)(b)(iv), which states: "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." If Rhonda were disagreeing with specific findings or legal rulings made by the magistrate, then objections would have been appropriate. The primary disagreement, though, that Rhonda has with the trial court's judgment is that the hearing was allowed to take place at all without her knowledge. It is the legitimacy of the hearing itself, and not a particular finding or conclusion drawn from the hearing, that is on appeal. *Page 11 
 {¶ 33} Rhonda obviously had a right to be notified of a hearing dealing with visitation rights. R.C. 3109.051(G)(1) gives Rhonda the right to receive notice of a hearing dealing with visitation issues arising from her relocation to Louisiana: "Upon receipt of the notice [of intent to relocate], the court, on its own motion or the motion of the parent who is not the residential parent, may schedule a hearingwith notice to both parents to determine whether it is in the best interest of the child to revise the parenting time schedule for the child." (Emphasis added.) Even without this specific statutory right to notice, Rhonda was entitled to notice under basic principles of due process. "`Regardless of the means by which the issue of modification [of visitation] is brought before the court, due process mandates a party receive adequate notice that the court is considering modification as well as an adequate opportunity to gather evidence and refute the other party's claims.'" In re Bowman (1995), 101 Ohio App.3d 599, 602,656 N.E.2d 355, quoting Heffner v. Heffner (Dec. 14, 1988), Summit App. Nos. 13623, 13624, 13625. "It is well-established that prior notice and opportunity to be heard concerning the determination of any matter affecting a party's rights and obligations are essential elements of due process of law." Jackson v. Jackson (2000), 137 Ohio App.3d 782, 801,739 N.E.2d 1203.
 {¶ 34} The record reflects that Rhonda had no notice of the hearing. A magistrate with little or no knowledge of the case was appointed to handle the matter but failed to retrieve the prior court records from this Court before conducting the hearing, failed to heed our prior Opinion which contained very specific rulings about visitation, failed once again to appoint a guardian ad litem for Kaydi Jo, and failed to *Page 12 
consider or even mention John's prior conviction for sexual assault in considering how to modify visitation.
 {¶ 35} Rhonda has established that reversible error occurred, and the record supports her arguments. Therefore, the trial court's judgment modifying visitation is vacated and the case is remanded to the Columbiana County Court of Common Pleas for further proceedings.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1