[Cite as *In re K.J.*, 2014-Ohio-3100.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | | JUDGES: |
| IN THE MATTER OF: K.J. | : | Hon. W. Scott Gwin, P.J. |
| DEPENDENT CHILD | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | |
| | : | |
| | : | Case No. 14CA7 |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Richland County Court of Common Pleas, Juvenile Division, Case No. 2010 DEP 00039

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     July 14, 2014

APPEARANCES:

For Appellant

DALE MUSILLI
105 Sturges Avenue
Mansfield, OH 44903

*Gwin, P.J.*

{¶1} Appellant appeals the December 30, 2013 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, overruling appellant's objections to the amended magistrate's decision and adopting the amended magistrate's decision denying appellant's motion for visitation and ordering that appellant have no personal contact with K.J. except as specifically approved by K.J.'s mother.

*Facts & Procedural History*

{¶2} Appellant Wendell Lindsay is the biological father of K.J., born on June 24, 2008. Appellant has been incarcerated since October 27, 2010. The parties agree that the following facts are not in dispute: on or about October 27, 2010, appellant was convicted of rape against a minor half-sibling of K.J. and on October 28, 2010, appellant was sentenced to a prison term of no less than ten years, and up to life imprisonment. On October 11, 2012, appellant filed a motion for visitation with K.J. that was opposed by K.J.'s mother, Richland County Children's Services, and K.J.'s guardian ad litem. The trial court initially indicated it would deny the motion for visitation after a February 2013 pre-trial, but subsequently scheduled the motion for trial.

{¶3} A trial was scheduled on appellant's motion for May 24, 2013. Appellant testified at the hearing that he is the biological father of K.J. and last saw her on March 17, 2010 when visitation was stopped due to his arrest. Appellant stated that, prior to his incarceration, he bought K.J. clothes, milk, shoes, and would babysit or see her approximately five (5) times per week. Appellant testified he has a very close bond with K.J. and that there are no allegations he abused or neglected K.J. Appellant seeks phone contact with K.J. and then visitation at the prison where he is incarcerated.

Appellant would follow any restrictions put on the visitation. Appellant described the visitation section of the Mansfield Correctional Institution as a cafeteria-type setting with officers and monitors there at all times. The small children have a small play area where inmates are not allowed to go and appellant stated the children he has seen in there do not seem fearful or afraid.

{¶4}  Appellant confirmed he sent a letter to K.J.'s mother and to K.J.'s caseworker and that the common theme of these letters was to proclaim his innocence. Appellant accused K.J.'s mother of lying about an incident during her testimony in his trial and also called the victim (K.J.'s half-sibling) a liar. Appellant testified he is innocent of the crime he was convicted of. Appellant has four sons at Delaware Hayes High School. They do not visit him at the prison, but they call him when they are at his mother's house and appellant does not force them to visit him. Appellant stated the last time he talked with K.J. was once at Christmas when K.J. was at his mother's home.

{¶5}  Tonnisha Lindsay ("Tonnisha"), appellant's daughter, testified she occasionally visits him in prison and the children she has seen there are happy, fine, and do not understand they are in a prison. She would be willing to transport K.J. to the prison and supervise visitation. Tonnisha believes in appellant's innocence and feels a continued relationship with appellant would be in the best interest of K.J.

{¶6}  Brandi Lindsay ("Brandi"), appellant's niece, testified she visits appellant twice per month and she takes her twenty (20) month old child and seven (7) month old child to visit appellant. The children are not scared or nervous to be at a prison. Brandi is willing to help with visitation and thinks K.J. would be willing to go with her for visitation. Brandi stated she feels it is important K.J. knows appellant is innocent and

that K.J. is not old enough to understand she is in a prison for visitation. However, Brandi acknowledged questions will start to arise because K.J. is a bright child.

{¶7} Hillary Rinehart ("Rinehart") is the guardian ad litem for K.J. and was appointed in April of 2010. She contacted the warden at Mansfield Correctional with regards to appellant's motion for visitation and received a letter back stating they would deny visitation. Rinehart testified that, at this time, it is not in K.J.'s best interest to have contact with appellant based upon the letter from the warden, the letters appellant wrote to K.J.'s mother and the caseworker, and the complexity of the situation with the victim since the victim is K.J.'s half-sibling. Rinehart testified that appellant's continual proclamation of innocence makes it possible a wedge would be driven between K.J. and her half-sibling. While Rinehart never observed appellant with K.J., appellant's state of mind based upon the letters he wrote makes her question his ability to be a positive influence on K.J. at this time. Rinehart stated K.J.'s mother does not want K.J. having contact with appellant because of the threat to the bond between K.J. and the victim of appellant's crime, K.J.'s half-sibling. Rinehart testified appellant's family can see K.J.

{¶8} Christine Johnson ("Johnson") is the caseworker from Richland County Children's Services assigned to K.J. since 2010. Johnson testified it is not in the best interest of K.J. to visit or have contact with appellant. Johnson's opinion is based upon her experience with the prison system, the fact that K.J. is the secondary victim of the crime, and K.J.'s closeness with the victim of the crime. Johnson testified K.J. is a secondary victim because she resided in the home with the other child while the crimes were being committed. Johnson stated contact between appellant and K.J. would likely cause a split in the family. Johnson was also concerned with appellant's criminal

history. Johnson further testified that K.J. has no emotional investment in appellant and K.J. has never mentioned her father to Johnson. Johnson testified that K.J.'s mother is doing well in making decisions about K.J.'s best interest. K.J.'s mother does not believe it is in the child's best interest to have a relationship with appellant at this time.

{¶9} The parties stipulated to the admission into evidence of a December 17, 2012 letter from the Deputy Warden of Operations at Mansfield Correctional Institution and that it correctly reflects the position of the institution that visitation between K.J. and appellant should be denied.

{¶10} The magistrate found that K.J.'s well-being would not be significantly enhanced by a relationship with appellant and there is a significant risk that her well-being would be negatively affected by such a relationship while the facts relating to his crimes and incarceration are the source of trauma to her mother and sister. The magistrate further found that, based upon the evidence, including stipulations, testimony, and exhibits, that it is not in the best interest of K.J. to have visitation or any other contact with appellant, except as may be specifically and explicitly approved by K.J.'s mother. The magistrate thus denied appellant's motion for visitation.

{¶11} Appellant filed objections to the magistrate's decision. The trial court undertook an independent review and ascertained that the magistrate had properly determined the factual issues and appropriately applied the law. The trial court specifically noted the lack of significant contact and thus lack of bond between appellant and K.J. and that, due to the length of his incarceration, it is unlikely appellant will be in a position to develop a normal father-child relationship with K.J. within the reasonable future. The trial court found it was not in the best interest of K.J. to have contact with

appellant and any arguable benefits to such contact is outweighed by the emotional harm to the child. The trial court therefore denied appellant's objections to the magistrate's decision and adopted and approved the amended magistrate's decision filed October 25, 2013 as the judgment and order of the court.

{¶12} Appellant appeals the December 30, 2013 judgment entry of the trial court and assigns the following as error:

{¶13} "I. THE TRIAL COURT ERRED IN MAKING FINDINGS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} "II. THE TRIAL COURT ERRED IN MAKING FINDINGS UPON IN SUFFICIENT EVIDENCE.

{¶15} "III. THE TRIAL COURT'S RULING AGAINST THE MOTION FOR VISITATION WAS AN ABUSE OF DISCRETION."

I., II., and III.

{¶16} A trial court's decision concerning visitation will not be reversed on appeal except upon a finding of abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). An abuse of discretion implies an attitude that is unreasonable, arbitrary, or unconscionable. *Id.* Further, "in modifying visitation rights, a court must determine whether a change in the visitation order is in the child's best interest, and it must consider the factors set forth in R.C. 3109.051(D) in making this determination. *In re Ross*, 154 Ohio App.3d 1, 2003-Ohio-4419, 796 N.E.2d 6 (1st Dist.). In order to further the child's best interest, the trial court has the discretion to limit or restrict visitation rights. *Jannetti v. Nichol*, 7th Dist. Mahoning No. 97-CA-239, 2000 WL 652540 (May 12, 2000). "This includes the power to restrict the time and place of

visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interest of the child." *Id.* When a parent is imprisoned for a term of years, visitation necessarily must depend upon the best interest of the child. *Id.*

**{¶17}** In addition, R.C. 3109.051(C) states, in part, that when determining whether to grant parenting time to a parent pursuant to R.C. 3109.12, the court shall consider the best interests factors of R.C. 3109.051(D). R.C. 3109.051(D) includes such factors as the interaction of the child with the parents, siblings, and other persons; the child's adjustment to home, school, and community; the health and safety of the child; the wishes of the child expressed herself or through her guardian ad litem; and the mental and physical health of all parties.

**{¶18}** Further, as an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses, but instead determine whether there is relevant, competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equip. Co. Inc. v. The Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA 5758, 1982 WL 2911 (Feb. 10, 1982). A judgment supported by some competent and credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶19}** Appellant argues the trial court's decision was against the manifest weight of the evidence, against the sufficiency of the evidence, and was an abuse of discretion. Essentially, the question before us in all of appellant's assignments of error is whether

the court abused its discretion in determining it was in K.J.'s best interest to deny appellant visitation.

{¶20} We find there is competent and credible evidence to support the trial court's decision and that the trial court's determination that contact with appellant is not in K.J.'s best interest is not an abuse of discretion. Though appellant testified he has a close bond with K.J., he has not seen her since March of 2010 and Johnson testified K.J. never mentions appellant and has no emotional attachment to appellant. In addition, the letter from the warden at Mansfield Correctional indicates his opinion is that visitation should be denied.

{¶21} Further, both Rinehart and Johnson, who have been the guardian ad litem and caseworker for K.J. since 2010, testified it is not the best interest of K.J. at this time to have contact with appellant. Rinehart stated her opinion is based upon the letter from the warden, the letters appellant wrote proclaiming his innocence, and the fact that appellant's proclamations of innocence might drive a wedge between K.J. and her half-sibling, with whom she resides. Rinehart also questions appellant's ability to be a positive influence on K.J. Johnson based her opinion on her experience with the prison system and the fact that K.J. is a secondary victim to appellant's crime as she resided in the home with the other child who was the victim of the crime when the crime was committed. Johnson testified contact between K.J. and appellant would likely cause a split in the family. This tension between appellant and K.J.'s half-sibling is demonstrated by appellant's confirmation he sent letters to K.J.'s mother to proclaim his innocence and that the family members of appellant who testified at the hearing believe in his innocence and feel it is important K.J. knows appellant is innocent.

{¶22} Based upon a review of the record, we find there is competent and credible evidence to support the trial court's determination. The trial court properly examined the totality of the circumstances, including whether visitation might detrimentally affect relationships with other members of K.J.'s family, and determined that granting appellant's motion for visitation was not in K.J.'s best interest. Moreover, the guardian ad litem and caseworker were of the same opinion that visitation or contact with appellant is not in K.J.'s best interest. Accordingly, the trial court did not abuse its discretion in finding it was not in the best interest of K.J. to have visitation or contact with appellant and in denying appellant's motion for visitation. Appellant's assignments of errors are overruled.

{¶23} The December 30, 2013 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Farmer, J., and

Baldwin, J., concur