[Cite as *Johnson v. Ulmer*, 2013-Ohio-4240.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

BRITTANY R. JOHNSON                          :

    Plaintiff-Appellant                  :        C.A. CASE NO.   2013 CA 9

v.                                           :        T.C. NO.   P9044

MICHAEL D. ULMER                             :     (Civil appeal from Common
                                      Pleas    Court,   Juvenile
Division)
    Defendant-Appellee                   :

                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the     27th     day of     September    , 2013.

. . . . . . . . . .

PATRICIA N. CAMPBELL, Atty. Reg. No. 0068662 and STEPHEN D. GREGG, Atty. Reg. No. 0089577, 90 E. Franklin Street, Bellbrook, Ohio 45305
    Attorneys for Plaintiff-Appellant

MICHAEL D. ULMER, 1920 Bridge Street, Apt. 710, Chillicothe, Ohio 45601
    Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

        **{¶ 1}** This matter is before the Court on the Notice of Appeal of Brittany Johnson,

filed February 28, 2013. Johnson and Michael Ulmer are the parents of A.J., born May 28,

2008, and Johnson appeals from the February 13, 2013 decision of the juvenile court which found her in contempt of court for violating the court's order regarding Ulmer's parenting time, denied her request that Ulmer's parenting time be supervised, and determined that Ulmer "has not willfully violated the Court's child support order." Ulmer did not file a brief herein.

{¶ 2} Johnson filed a Complaint for Paternity, Sole Custody, Child Support and Other Related Matters on August 2, 2010. On October 26, 2010, after Ulmer's paternity was established, he filed a Motion to Establish Shared Parenting Plan/Motion for Allocation of Parental Rights and Responsibilities/Request for Interim Parenting Time. Following a pre-trial conference, an Agreed Entry was filed that established interim parenting time for Ulmer and determined his child support obligation.

{¶ 3} Following a hearing, the court issued a Judgment on April 13, 2011 that granted legal custody of A.J. to Johnson, maintained Ulmer's child support obligation as set forth in the Agreed Entry, and set forth Ulmer's parenting time schedule pursuant to the attached "Age Appropriate Visitation Guideline," with certain modifications. One modification is that "All visits may be exercised at a location of Mr. Ulmer's choice; however, Mr. Ulmer shall not permit the child to be in the presence of his mother's husband. Mr. Ulmer may permit the child to be in the presence of his mother as long as Mr. Ulmer is also present."

{¶ 4} On September 24, 2012, Ulmer filed a motion requesting that the court find Johnson in contempt for denying him parenting time with A.J. His motion provides that Johnson was "noncompliant on several occasions regarding court ordered visitation." On

October 10, 2012, Johnson filed a Motion for Supervised Parenting Time, asserting that Ulmer "frequently exercises his parenting time at his mother's residence where he allows the minor child to be in the presence of his mother's husband, which is in direct violation of the Judgment filed on April 13, 2011." Johnson also filed a Motion for Contempt and Other Related Matters, in which she asserted that Ulmer "is not paying his child support obligation" and is allowing A.J. "to be in the presence of his mother's husband." On November 1, 2012, Ulmer filed an Amended Motion to Show Cause and Other Related Matters, which delineates the dates that he asserts Johnson denied him parenting time, namely September 7, 2012, September 21, 2012, October 5, 2012, and "one week of parenting time during the summer of 2012," and "one weekend in November 2011." Ulmer also sought to modify his parenting time.

{¶ 5} A hearing was held on the motions on February 11, 2013, at which both Johnson and Ulmer testified. Ulmer testified that he lives in Chillicothe, Ohio. He stated that he worked as a server at Red Lobster for almost a year until he was laid off in June, 2012. He testified that he "just came from an interview today" at Towne Properties, for a job as an administrative assistant. He stated that he is not voluntarily unemployed, and that he has not quit any of his jobs. He stated that he last made a child support payment in November of one thousand dollars. On cross-examination, he acknowledged writing on his FaceBook page on December 8, 2012, that he was not looking for work, and he testified, "I wasn't looking for a job because I went to Florida" for a vacation at a timeshare owned by his wife's grandfather. He stated that he is planning to move to Dayton. According to Ulmer, in looking for work, he "applied to Sam's Club, I applied to Liberty Mutual, I applied

to Express temp agencies.  * * * I applied to the Reserve Network temp agency.  I've applied for like 50 jobs."  He also stated that he applied to PNC and Fifth Third.  Ulmer acknowledged that his most recent child support payment was "a tax refund intercept."  He acknowledged that he is in arrears $2,600.00 in child support.  On redirect, Ulmer stated that he believes child support is necessary and that he intends to make payments.

{¶ 6}   Ulmer testified that his visitation schedule consisted of one overnight visitation with A.J. every other weekend and three hours midweek.  He asked that his parenting time be increased to two nights on the weekend, from Friday to Sunday, and that his mid-week hours be "transferred to the weekend."  Ulmer stated that Johnson denied visitation on September 7, 2012, September 21, 2012, and October 5, 2012, because he failed to call her ahead of time to confirm his visitation.  He stated that she denied him a week of visitation in the summer of 2012, and that Johnson "thinks that we had made an agreement to switch the dates around, which there was no agreement."  According to Ulmer, he "was supposed to get [A.J.] for Thanksgiving and [Johnson] told me to talk to my lawyer," and that "Christmas, I was supposed to get her as well and I text messaged her and she said she would let me get her for two hours, but my, my schedule wouldn't allow me" to be there for the two hours.  Ulmer testified that he has not seen A.J. in five months.

{¶ 7}   Ulmer testified that A.J. has never been harmed while in his care.  Ulmer admitted violating the court's order regarding his stepfather, Lester Allen, on Mother's Day, 2012, and he stated that he has done so "maybe ten" times.  Ulmer stated that Allen was convicted of unlawful sexual conduct with a minor, and that he is a registered sex offender.  Ulmer identified a photograph, provided by Johnson, depicting A.J. in the presence of Allen

and other family members. He stated that his visitations occur at his mother's Beavercreek home since he resides in Chillicothe. When asked if Johnson was aware that A.J. was in Allen's presence, he responded, "She knew that it would be a possibility every time that I got my daughter, that that's where I would take her, to my mother's house where Lester lives." He stated that A.J. has never been harmed while in Allen's presence. In response to a question from the court, Ulmer stated that Johnson has specifically told him that it is all right for A.J. to be around Allen. Ulmer stated that in the future he will honor the court order that A.J. is not to be in the presence of Allen. Ulmer stated that Johnson "knew Lester and his history prior to us having [A.J.]." Ulmer testified, "I'll do whatever it takes to protect my daughter. He, Lester has never been around [A.J.] without my supervision." When asked what protection he believed A.J. needed from Allen, Ulmer responded, "* * * No protection."

{¶ 8} The following exchange occurred on recross-examination:

Q. Can we assume correctly that you are going to continue to go over to your mom's when you have your daughter?

* * *

A. It depends what the judgment is of the court.

Q. How do we know that Mr. Allen is not going to be present at his wife's house while you bring your daughter over there, Mr. Ulmer?

A. I won't take her over there if he is there.

{¶ 9} Ulmer stated that if his motion for extended parenting time is granted, he wants to exercise his full weekend visitation at his home in Chillicothe, and that he is

"planning on moving back to Dayton here within the next couple months. And then it will be in Dayton, in my household in Dayton." He stated that he will not reside with his mother.

{¶ 10} Johnson stated that she resides in Beavercreek and is employed as a nurse. She stated that she never agreed to allow A.J. to be in Allen's presence. She stated that supervision of Ulmer's visitation is necessary so "[t]hat way I can know [A.J.] is protected and she's not being around Lester." Regarding her initial denial of visitation, she stated, "What happened, when Michael was talking about that, I had asked him to let me know on Mondays or Tuesdays if he was going to be able to make it for the weekend. Because I work nights, I leave for work at 6:00 or 6:30. When he comes at 6:00, if he just doesn't show up, I don't have a babysitter." According to Johnson, "A couple times he did come right when I was leaving, and he just wouldn't text me back and let me know that he was coming. I'm requesting that the Judge will put that in the paper, that he can at least have the decency to tell me if he's coming or not so I can arrange a babysitter."

{¶ 11} Johnson admitted that she further withheld visitation beginning on September 7 or 8, 2012, after she observed the photograph, identified by Ulmer, on the Facebook page of Ulmer's sister depicting A.J. and Allen together with several family members. She testified, "I was withholding visits from Michael because I wanted to protect my daughter. She's four years old, she can't protect herself, only I can. That is the only reason that I wasn't letting him have her. It had nothing to do with the money, it's protecting my daughter. And that's what I'm supposed to do as her mother."

{¶ 12} When asked why she waited over a month, after observing A.J. in the

photograph with Allen, to file her motion for contempt, Johnson stated, "I figured if he would like to see his child, then he can take me to court." Johnson acknowledged on cross-examination that she has not allowed Ulmer to see A.J. in five months "because he was breaking the court order." When asked why she denied visitation in the summer, before she learned that A.J. was in Allen's presence, she responded, "Michael came - - called me to pick [A.J.] up at 9:00 at night. [A.J.]'s four years old. She was already in bed." When asked if Ulmer was given the opportunity to pick up the child the next day, she responded, "He never can communicate with me on when he's coming. He thinks he can just come whenever he wants. * * * that's not how, that's not convenient for me. I have jobs - -a job and things to do." She further stated, " * * * When I said no, he couldn't come get her at 9:00 p.m., he started calling me all these names. * * * he didn't even ask if he could come the next day."

{¶ 13} The following exchange occurred:

Q. Has Michael ever hurt [A.J.]?

A. Not that I know of.

Q. Well, you're a nurse, right?

A. I am.

Q. Have you ever noticed anything to cause you concern about [A.J.]?

A. No.

{¶ 14} Johnson stated that she was aware of Allen's history when she and Ulmer were together. She acknowledged that there is nothing in the court order requiring Ulmer to provide her with notice regarding his plans to exercise his scheduled parenting time.

{¶ 15}  In its February 13, 2013 Judgment Entry, the court made the following findings of fact:

1.  Brittany Johnson has repeatedly obstructed Mr. Ulmer's weekend visitation and did not allow him to exercise his 2012 summer visit.  Brittany Johnson has violated the Court's Order of Parenting Time.  The Court finds her to be in contempt of Court.

2.  Michael Ulmer has repeatedly allowed [A.J.] to be in the presence of Mr. Ulmer's stepfather during Mr. Ulmer's visitation.  Michael Ulmer has violated the Court's Order of Parenting time.  The Court finds him to be in contempt of Court.

3.  Mr. Ulmer was employed at Red Lobster Restaurant but was laid off in June 2012.  He has been making a reasonable effort to find employment by submitting employment applications to numerous employers.  He is not voluntarily unemployed.  He has not willfully violated the Court's child support order.

{¶ 16}  The court then issued the following orders;

1.  As a sanction for Brittany Johnson's violation of the Court's order, the Court imposes a jail sentence of ten (10) days.  Said sentence is suspended on the condition that Ms. Johnson has no further violations of the Court's Order of Parenting Time.

2.  As a sanction for Michael Ulmer's violation of the Court's order, the Court imposes a jail sentence of ten (10) days. Said sentence is suspended on the condition that Mr. Ulmer has no further violations of the Court's Order

of Parenting Time.

\* \* \*

4. Ms. Johnson's Motion for Supervised Parenting is denied. Mr. Ulmer's request to expand his visitation is denied.

5. During the time that Michael Ulmer, the child support obligor, is unemployed, he shall apply to three (3) places of employment every two (2) weeks and notify the Greene County CSEA \* \* \* of the place[s] of employment to which he has applied, at the end of each two week period.

{¶ 17}   Johnson asserts three assignments of error herein.   Her first assignment of error is as follows:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND MOTHER IN CONTEMPT FOR WITHHOLDING PARENTING TIME FROM FATHER."

{¶ 18}   Johnson asserts that she justifiably withheld parenting time from Ulmer due to "extraordinary circumstances," namely "because she wanted to protect A.J. from Father repeatedly disobeying a court order and bringing the child into contact with a registered sex offender. \* \* \* As a result, Mother was justified in withholding parenting time because of the extraordinary circumstance that her child was willfully put in the dangerous presence of a registered sex offender."

{¶ 19}   R.C. 2705.031 governs in part contempt actions for failure to comply with visitation orders.   R.C. 2705.031(B)(2) provides:

Any parent who is granted parenting time rights under a parenting time order or decree issued pursuant to section 3109.051 or 3109.12 of the

Revised Code, any person who is granted visitation rights under a visitation order or decree issued pursuant to section 3109.051, 3109.11, or 3109.12 of the Revised Code or pursuant to any other provision of the Revised Code, or any other person who is subject to any parenting time or visitation order or decree, may initiate a contempt action for a failure to comply with, or an interference with, the order or decree.

{¶ 20} As this Court recently noted:

In *State v. Chavez-Juarez*, 185 Ohio App.3d 189, 2009-Ohio-6130, 923 N.E.2d 670 (2d Dist.), we recently discussed the concept of civil and criminal contempt:

Contempt is defined in general terms as disobedience of a court order. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions. * * * Contempt proceedings are often classified as sui generis, neither civil nor criminal. * * * However, most courts distinguish between civil and criminal contempt proceedings. The distinction is usually based on the purpose to be served by the sanction. * * * Thus, in determining whether a contempt is civil or criminal, the pertinent test is "what does the court primarily seek to accomplish by imposing sentence?" * * *Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. * * * Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the

authority of the court. * * * Thus, civil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court. *Id*., at ¶ 24-25, citing *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554-555, 2001-Ohio-15, 740 N.E.2d 265.

"A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order." *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, 2010 WL 2473277, ¶ 4. "Clear and convincing evidence is the standard of proof in civil contempt proceedings." *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP1176, 2011-Ohio-5972, 2011 WL 5825404, ¶ 13. We review the trial court's decision whether to find a party in contempt under an abuse-of-discretion standard. *Wolf* at ¶ 4. *Jenkins v. Jenkins*, 2d Dist. Clark No. 2011 CA 86, 2012-Ohio-4182, ¶ 11-12.

{¶ 21} As this Court has noted:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeons, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990). *Feldmiller v. Feldmiller,* 2d Dist.

Montgomery No. 24989, 2012-Ohio-4621, ¶ 7.

{¶ 22} Johnson directs our attention to *McClead v. McClead*, 4th Dist. Washington No. 06CA67, 2007-Ohio-4624, and the cases cited therein. In *McClead*, Stacey McClead feared that her child with Jason McClead was "enduring some form of sexual abuse while in Jason's care," she denied visitation, and the "trial court found Stacey's concern for her child's well being prompted her decision to deny [Jason] visitation." *Id., ¶* 3. The court declined to find Stacey in contempt. *Id*. According to Stacey, her denial of visitation was prompted by the fact that "the child became aggressive after visiting her father and began to have frequent nightmares. Later, Stacey noticed that the child began touching herself in her private areas and engaging in other sexual behaviors. The child played with her dolls in a provocative manner and made sexual gestures toward her step-grandfather." *Id*., ¶ 6.

{¶ 23} The Fourth District determined as follows:

Some Ohio appellate courts, including this one, have recognized what essentially amounts to a defense for violating a visitation order when a parent has a good faith belief that she or he is acting to protect the safety of the child. In *Shafer* [v. *Shafer*, 4th Dist. Washington No. 93CA16, 1993 WL 524958 (Dec. 1, 1993)], we determined that the trial court did not abuse its discretion by declining to find a mother in contempt for disobeying a visitation order when the mother "genuinely perceived a threat to her children and acted in disobedience of the visitation order so as to protect them."[1]

---

[1]We note that the *Shafer* court concluded as follows: "Our ruling should

Likewise, in *Buchanan v. Buchanan* (Aug. 16, 1999), Clermont App. No. CA98-10-085, [1999 WL 619049], the court affirmed the trial court's refusal to find a father in contempt when the father denied the mother visitation due to his concerns about physical abuse. The trial court concluded that the father acted reasonably under the circumstances and, based upon this finding, the appellate (sic) found no abuse of discretion.[2] Similarly, in *Boley v. Boley* (Sept. 19, 1994), Holmes App. No. CA 498, the court affirmed a trial court's decision declining to find a father in contempt when the father had a good faith belief that the children's safety was at risk if returned to their mother. The court stated: "This Court will not substitute our judgment for that of the trial court and will not impose punishment for the violation of a court order when the court that made the original order finds a legitimate excuse." See, also, *Clark v. Clark* (Apr. 19, 1993), Preble App. No. CA92-01-001 (concluding that trial court did not abuse its discretion by declining to find

---

not be misconstrued as an endorsement of appellee's actions. We are not unsympathetic to the plight of parents who fear their children are being abused during visitation. Understandably, those parents want to take immediate action to ensure that the suspected abuse is not repeated. Those parents, however, *must go through the courts.*" *Id.*, at *4. (Emphasis in original).

[2]It was significant to the *Buchanan* court that the "magistrate noted that [the child] stated, 'Mommy hit me in the teeth.' The magistrate also noted that [the child] had other bruises on her leg. These factual findings were adequate to support the legal conclusion that appellant had committed domestic violence against [the child]."

mother in contempt for violating visitation order when mother explained she denied father visitation due to concerns about sexual abuse)[3]; *Bardenhagen v. Bardenhagen* (Aug. 27, 1990), Clermont App. No. CA90-01-009 (determining that trial court did not abuse its discretion by refusing to find mother in contempt for failing to allow father visitation when mother suspected father committed sexual or physical abuse).[4]

While we sympathize with Jason's predicament and may have decided the issue differently, we cannot say the trial court abused its discretion by not finding Stacey in contempt. The trial court essentially determined that Stacey had justifiable reasons for disobeying the visitation order. It concluded Stacey believed that the child was being subjected to some type of sexual abuse and violated the order to protect the child. While the better course of action would have been for her to seek judicial relief, under these circumstances, the trial

---

[3]The *Clark* court concluded, "It is obvious that appellee's sole motivation in not allowing appellant to visit [the child] was to shield [the child] from any *additional* harm. Under these circumstances, it was not unreasonable, arbitrary, or capricious for the trial court to deny appellant's contempt motion." (Emphasis added). *Clark*,, 1993 WL 119814, *2.

[4] The *Bardenhagen* court concluded, "Given appellee's suspicions of sexual abuse, it was not unreasonable for her to terminate visitation in order to prevent harm to her children until a court order could be obtained. Appellee unilaterally terminated visitation in August but waited until October 6, 1988 to file a motion with the court. In our view, appellee was dilatory in this respect and should have sought a court order as soon as possible. Nevertheless, the decision of whether to find a party in contempt is discretionary with the trial court." *Bardenhagen*, 1990 WL 124236, *3.

court's decision declining to hold Stacey in contempt is not an abuse of discretion. *McClead*, ¶ 33-34.

**{¶ 24}** The Ninth District considered *Shafer*, *Bardenhagen*, *Boley*, *Clark* and *McClead* in *Morehart v. Snider*, 9th Dist. Summit No. 24640, 2009-Ohio-5674. Therein, Stephanie Snyder asserted that the trial court abused its discretion when it found her in contempt for not allowing Ethan Morehart to exercise visitation with their child "to protect her child from what she perceived as sexual abuse" by Morehart. *Id*., at ¶ 37. Stephanie relied upon the above cases, and the Ninth District determined, "the cases cited by Mother do not establish a defense to violating a court-ordered visitation schedule; rather they reinforce the idea that the trial court has discretion in these matters." *Id.,* at ¶ 38. In concluding that the trial court did not err, the Ninth District determined, "Although we understand Mother's concern for her child's welfare, we cannot find reversible error in the trial court's decision, given that an appropriate course of conduct would have been to seek immediate judicial intervention in lieu of engaging in an ongoing violation of an order of a court." *Id*., ¶ 39.

**{¶ 25}** We initially note that we are mindful that sex offenders present a particular safety concern, and we are sympathetic to Johnson's desire to protect A.J. Unlike the above cases upon which she relies, however, there are no allegations or evidence in the record that A.J. has been abused or mistreated while in Ulmer's care; Johnson testified that she has not noticed anything about A.J. that causes her concern. Further, the record reflects that Johnson withheld visitation for reasons other than the fact that Ulmer allowed A.J. to be in the presence of Allen, namely that Ulmer did not provide her with notice regarding visitation,

and that he arrived at an inconvenient time. Since Johnson engaged in an ongoing violation of the court's order, denying Ulmer visitation for five months, it was within the trial court's discretion to find her in contempt of court. An abuse of discretion is not demonstrated, and Johnson's first assigned error is overruled.

{¶ 26} Johnson's second assigned error is as follows:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ORDER SUPERVISED PARENTING TIME FOR FATHER BASED ON HIM IRRESPONSIBLY AND PURPOSELY EXPOSING THE CHILD TO THE THREAT OF HIS REGISTERED SEX OFFENDER STEP-FATHER."

{¶ 27} According to Johnson, the "trial court abused its discretion when it denied Mother's request for Father to have supervised parenting time because the court did not apply the statutory factors contained in R.C. 3109.051(D)." Johnson further asserts that since she "demonstrated the existence of an extraordinary circumstance and Father failed to prove that any parenting time would be in the best interests of their child, the trial court abused its discretion when it failed to have Father's parenting time restricted to supervised parenting time."

{¶ 28} This court stated, in *Schoenfelt v. Schoenfelt*, 2d Dist. Montgomery No. 23497, 2009-Ohio- 6594, ¶ 8:

The trial court's discretion in parenting-time matters, while broad, is bounded by R.C. 3109.051. See *Braatz v. Braatz* (1999), 85 Ohio St.3d 40, 44, 706 N.E.2d 1218 (saying that R.C. 3109.051 "specifically and in detail addresses the granting of parental visitation rights") (Emphasis omitted). The

outer bounds set by this section require the court's parenting-time decision to ensure that both parents have the opportunity for "frequent and continuing contact with the child" and to be "just and reasonable." R.C. 3109.051(A). To help ensure a just and reasonable decision, paragraph (D) instructs the trial court to consider fifteen specific factors plus any other factor the court finds is in the child's best interest. *Braatz*, at 45, 706 N.E.2d 1218 "[T]he trial court shall consider the fifteen factors enumerated, and in its sound discretion determine visitation that is in the best interest of the child." (Citations omitted). These factors include: a child's relationships with her parents and siblings; the geographical locations of the parents' residences; the child's and parents' available time; the child's age; the child's adjustment to home, school, and community; the health and safety of the child; the amount of time the child will spend with siblings; and the mental and physical health of all concerned. R.C. 3109.051(D).

This Court further noted that "finding no evidence to the contrary, we will presume that the court considered each of the paragraph (D) factors. * * * ." *Id.*, ¶ 9.

{¶ 29} Johnson directs our attention to *Hoppel v. Hoppel*, 7th Dist. Columbiana No. 03 CO 56, 2004-Ohio-1574. Therein, the Seventh District determined that the trial court abused its discretion when it granted unsupervised parenting time of K.J. to her father, who had been convicted of sexual battery against his stepdaughter, S.O. The Seventh District determined that, pursuant to R.C. 3109.051(D)(11), the "crime itself is a factor weighing against visitation, and the fact that the victim of this crime in this case was [K.J.'s] sister

would undoubtedly elevate the importance of this factor among the list of factors found in R.C. 3109.051(D)." *Id*., ¶ 38. The court further noted that "Appellee's crime automatically implicates R.C. 3109.151(D)(7)," which requires the court to consider the "health and safety of the child." *Id*., ¶ 39.

{¶ 30} *Hoppel* is distinct in that the father therein was a convicted sex offender. Although the trial court did not discuss the relevant factors in overruling Johnson's motion for supervised parenting, we presume that it considered them, including A.J.'s health and safety. As noted above, there is no allegation or evidence that A.J. has suffered any harm while in Ulmer's care. Ulmer testified that A.J. was never left unsupervised in Allen's presence, and that Ulmer would comply with the court's order regarding Allen in the future. Finally, while the trial court denied Johnson's motion for supervised visitation, the court also found Ulmer in contempt for violating its order to ensure Ulmer's future compliance. An abuse of discretion is not demonstrated, and Johnson's second assigned error is overruled.

{¶ 31} Johnson's third assigned error is as follows:

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO FIND FATHER IN CONTEMPT OF COURT FOR FAILURE TO PAY HIS CHILD SUPPORT OBLIGATION."

{¶ 32} "Any party who has a legal claim to any support ordered for a child * * * may initiate a contempt action for failure to pay." R.C. 2705.031(B)(1). As this court has noted:

> * * * In a civil contempt action, the movant must show by clear and
>
> convincing evidence that the alleged contemnor violated a court order. *Pugh*

*v. Pugh* (1984), 15 Ohio St.3d 136, 139, quoting *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253; *Rinehart v. Rinehart* (1993), 87 Ohio App.3d 325, 328. The movant is not required to show, however, that the violation was "purposeful, willing or intentional [.] * * * " *Pugh*, *supra,* paragraph one of the syllabus. Once the movant has put forward a prima facie case, the burden falls to the defendant to prove his inability to comply with the order. *Id*. at 140; *Rinehart, supra*, 87 Ohio App.3d at 328; *Wagner v. Wagner* (July 10, 1987), Montgomery App. No. CA10115, unreported. An unsubstantiated claim of financial difficulties is insufficient to satisfy the defendant's burden, *see Pettit v. Pettit* (Dec. 23, 1993), Cuyahoga App. No. 64582, unreported (unsupported statement of "I have been broke" does not establish inability to comply); the defendant must show his inability to "be real and not self-imposed, nor due to fraud, sharp practices, or intentional avoidance." *Wagner, supra. DeWitt v. DeWitt*, 2d Dist. Darke No. 1386, 1996 WL 125920, *2 (March 22, 1996).

{¶ 33}   The record reflects, and Ulmer did not dispute, his failure to comply with the court order regarding child support.  Ulmer testified, however, that he was laid off from work, that he is not voluntarily unemployed, that he has been looking for work at multiple places, that he recognizes  the necessity of his child support obligation, and that he intends to pay child support.  The court's judgment reflects that it considered Ulmer's inability to pay to "be real and not self-imposed," and not based upon "intentional avoidance."  We defer to the trial court's assessment of credibility.   Finally, the court ordered Ulmer to

apply to three places of employment every two weeks and to notify the Greene County Child Support Enforcement Agency of the places to which he applied. We conclude that an abuse of discretion is not demonstrated, and Johnson's third assigned error is accordingly overruled.

{¶ 34} Johnson's assigned errors having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, P.J. and HALL, J., concur.

Copies mailed to:

Patricia N. Campbell
Stephen D. Gregg
Michael D. Ulmer
Hon. Robert W. Hutcheson