[Cite as *In re J.L.C.*, 2019-Ohio-2721.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

IN THE MATTER OF:

J.L.C.,

MINOR CHILD.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 JE 0026**

---

Civil Appeal from the
Court of Common Pleas, Juvenile Division, of Jefferson County, Ohio
Case No. 2018 CU 00032

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Sharon N. Bogarad*, 3412 West Street, Weirton, West Virginia 26062, for Appellee.

*Atty. Francesca T. Carinci*, Suite 904-911, Sinclair Building, 100 North Fourth Street, Steubenville, Ohio 43952, for Appellant.

Dated: June 28, 2019

---

**WAITE, P.J.**

{¶1} Appellant-mother, L.W. appeals the November 26, 2018 Jefferson County Common Pleas Court, Juvenile Division judgment entry overruling her objections to a

magistrate's decision denying her motion to modify parenting time. She sought to change the parenting time granted by an earlier West Virginia Family Court order to the Jefferson County local parenting time schedule. Appellant argues the trial court abused its discretion in denying her motion to modify parenting time because the record does not support the court's determination that modification was not in the child's best interest. Appellee-father, J.C., contends that in the final custody determination order from the West Virginia Family Court, the West Virginia judge determined Appellant had alienated Appellee from the parties' two older children. Hence, the West Virginia order, along with the evidence presented in the Jefferson County hearing by Appellee, formed a sufficient basis for the trial court to deny Appellant's motion to modify parenting time. Based on the following, we conclude the trial court did not abuse its discretion in denying Appellant's motion to modify parenting time. Appellant's assignment of error is without merit and the judgment of the trial court is affirmed.

### Factual and Procedural History

{¶2} While they never married, the parties have had a somewhat contentious relationship spanning several years while they resided in Brooke County, West Virginia. There are three children born of the relationship: twins born on 2/15/2001, and a third child born 12/1/2008. All three children have the same initials: J.L.C. At the time the parties finally ended their on-again, off-again relationship in 2011, they resided in Brooke County, West Virginia. An initial temporary parenting plan was issued in the West Virginia Family Court on June 24, 2011. On February 19, 2015, an agreed parenting plan was adopted by the West Virginia court providing week-to-week alternating parenting time with the three children. A stated goal of the plan was to minimize contact between the parties.

Throughout the proceedings the parties' interactions were consistently acrimonious, with multiple allegations of domestic violence and abuse and neglect of the children from both parties. None of these allegations resulted in convictions or an adjudication of the children as abused or neglected. Neither party has ever been subject to supervised visitation or had restrictions placed on their parenting time.

{¶3} Subsequent to entering the agreed parenting plan, the parties continued to behave with acrimony towards one another. Each party referred the other to the local children's services agency, West Virginia Department of Health and Human Services, based on allegations of abuse and neglect. As a result, each party agreed to enter into a voluntary safety plan regarding the children. The safety plan required each party to undergo a psychological evaluation and to submit to a home site supervision. Again, neither parent was subject to any supervised visitation or other restrictions on parenting time as a result.

{¶4} On June 22, 2015, Appellee filed a petition in West Virginia to modify the prior custody and child support order. Appellee alleged that Appellant had alienated him from the two older children and that the existing custody order would cause Appellee to be alienated from the youngest child, as well. Appellee requested that Appellant's parenting time with the youngest child be supervised. Appellee also informed the court he intended to move to Jefferson County, Ohio, and sought to relocate the youngest child and enroll the child in school in Ohio. Due to their alienation, Appellee requested that no parenting time be ordered with the two older children.

{¶5} Several days of testimony were held in the matter commencing December 4, 2015. A number of witnesses appeared, including: (1) Don Jones ("Jones"), a

supervisor with the West Virginia Department of Health and Human Resources; (2) Casey Prettyman ("Prettyman"), who had conducted a psychological evaluation of Appellant; (3) Chad Thomas ("Thomas"), the social worker who had conducted the supervised home site visit of each parent; (4) Terry Mains ("Mains"), the youngest child's school teacher; and (5) T.C., Appellee's fiancée and now his wife. Both parties also testified at the hearing.

{¶6} Jones testified that despite the implementation of a safety plan for the parties after the home visits, Appellant could not move past her animosity toward Appellee and would not follow the safety plan. Jones testified that he discussed with his supervisor whether to file an abuse/neglect allegation against Appellant for failing to follow the voluntary safety plan, but ultimately decided not to file when the trial court issued temporary orders designating Appellee as the primary residential parent for the youngest child.

{¶7} Thomas testified that Appellant was defiant and refused to follow the safety plan or comply with the parenting plan in place. Thomas testified that while visiting Appellee's home, he witnessed the two older children acting out in a "very negative way" toward Appellee and his wife, including calling the wife names and harassing her. (12/29/15 J.E., p. 7.) Thomas testified that the youngest child only acted out when the child observed the actions of the two older children.

{¶8} Mains testified that she had been able to observe both parents at the school and that she had experienced issues with Appellant, who constantly objected to the teacher's authority, and was unable to cooperate with the teacher to make sure the child's homework was completed. Mains also testified that Appellant failed to provide notice if

the child was going to be absent for extended periods from school. The teacher also observed Appellant coming to the school to visit with the child during the weeks that Appellee exercised parenting time, in violation of the safety plan.

{¶9} Appellee's wife testified, among other things, that Appellant had sprayed her in the face with pepper spray while she was standing in her own driveway. The three children were in Appellant's car and witnessed the incident.

{¶10} At the conclusion of the hearing, the West Virginia trial court issued a final custody order, dated December 29, 2015. The order is several pages in length and includes fifty-nine findings of fact. A majority of the findings of fact relate primarily to Appellant's conduct. Although too numerous to recite in its entirety herein, the findings in the order include Appellant's allegation Appellee raped her and that she shared this allegation with the two older children; Appellant's apparent diagnosis of "histrionic personality" disorder; and Prettyman's conclusion that Appellant had "boundary issues" in sharing inappropriate information with her two older children, including giving them access to her social media accounts wherein the children "could observe the sexual comments that were made" between Appellant and "two men who communicated with her" on social media. (12/29/15 J.E., p. 4.) The West Virginia court also found that, despite ongoing therapy, Appellant had not progressed and had alienated the two older children from Appellee.

{¶11} In its judgment entry, the West Virginia court concluded that Appellee established by a preponderance of the evidence that Appellant had "so broken the relationship between [Appellee] and the two older children that such relationship cannot, at present, be repaired." (12/29/15 J.E., p. 12.) Also, the court concluded that Appellant's

"diagnosed histrionic personality disorder impedes to her ability to modify her behavior to allow her to comply with any meaningful efforts to bring about reconciliation between [Appellee] and the older two children." (12/29/15 J.E., pp. 12-13.) Finally, the court concluded:

8. Without any hope that [Appellant] will act as a willing parent, no amount of increased parenting time * * * between [Appellee] and the two older children will help cure the adverse effects. And based upon [Appellant's] history of domestic violence allegations, unproven rape allegations, and inappropriate behavior with authority figures such as teachers and Department of Health and Human Resources representatives, as well as, dangerous behavior toward [Appellee's wife], this Court does not believe she is capable of co-parenting with [Appellee] in a manner that will reconcile the break with her two older children. In fact, the evidence shows that [Appellant] believes she has acted in no way inappropriately. If she does not recognize it, and won't seek the help of a therapist to gain those insights, a reparative parenting plan is doomed to fail.

9. This same relational issue has not yet reached [the youngest child]. But it will if substantial change is not made, plainly because [Appellant] sees nothing wrong with her actions to this point and thus the [Appellant's] same dysfunctional parenting, which has damaged the twins' relationship with [Appellee], will be applied to [the youngest child].

10. Moreover, the older two children will teach [the youngest child] by example. Although it is not appropriate to prohibit all contact between the twins and [the youngest child], it is necessary to remove [the youngest child] from [Appellant's] primary care, and allow [the youngest child] and the twin siblings time only during [Appellant's] parenting time with [the youngest child].

(12/29/15 J.E., pp. 13-14.)

{¶12} The West Virginia court modified the parenting order to designate Appellee as the primary residential parent and custodian of the youngest child and Appellant as the primary residential parent of the two older children. The court did not order visitation between Appellee and the two older children. Appellant was granted parenting time with the youngest child on alternating weekends and alternating holidays.

{¶13} Both parties subsequently moved to Jefferson County, Ohio. On March 5, 2018, Appellant filed with the Jefferson County Court of Common Pleas, Juvenile Division to register the child custody order issued by the Brooke County, West Virginia Family Court as an Ohio order. Appellee did not object. Prior to this filing, on March 1, 2018, Appellant had filed a motion seeking to have her parenting time modified to conform to the Jefferson County local parenting time guidelines. The modification request was set for a hearing. According to Appellant, during pretrial negotiations Appellee continued to raise issues that were previously litigated in the West Virginia court. As a result, on April 20, 2018, Appellant filed a motion in limine seeking to restrict Appellee from relitigating previously decided issues and introducing any evidence aside from actions that had transpired since the 2015 West Virginia order. Appellee filed a motion in opposition on

May 24, 2018, contending that the previous West Virginia order was based on evidence of Appellant's course of conduct which should be introduced so that the trial court in Jefferson County could make the appropriate determination on modification of parenting time. Appellant filed a reply to the opposition motion on June 5, 2018, reasserting that while the order itself should be recognized by Jefferson County, the underlying evidence was no longer relevant. On June 19, 2018, the trial court issued a judgment entry taking jurisdiction in the matter and ordering a temporary summer parenting time schedule.

{¶14} The matter proceeded to a full hearing on August 14, 2018. At the outset, the magistrate recognized that the two older children had been alienated and that the issue of modification of parenting time related only to the youngest child. The magistrate granted Appellant's motion in limine and ruled that no evidence of events that occurred prior to the West Virginia order could be presented. While the West Virginia order was necessarily of record the court would hear only evidence relevant to whether a modification of that parenting order was in the child's best interest. (8/14/18 Tr., pp. 4-9.)

{¶15} Appellant called Appellee as her first witness. Under cross-examination, Appellee testified that Appellant had been exercising alternating weekend visitation and alternative holidays without incident. He testified the child takes Adderall for attention deficit disorder ("ADD") and has no academic problems at school. The child is enrolled in various sports and both parties take the child to extracurricular events without incident. Appellant calls the child every night and talks for 15 minutes, which was acceptable. Appellee testified that after visiting with Appellant the child returns to his home appropriately dressed. However, the child told him that Appellant allows the child to go to a park that is two blocks away from Appellant's home alone, despite his disapproval.

Appellee also disapproves of Appellant allowing the child to play mature video games depicting violence.  When asked whether Appellee has argued with Appellant about the child, Appellee stated:

> It's -- I don't know if there's been any arguments.  There's been disagreements about, I mean, her babying him.  It was just at baseball actually.  I told her -- she went into his dugout during the middle of the game and I told her stop babying him, to, you know, get out of the dugout.

(8/14/18 Tr., p. 31.)

{¶16}  Appellee testified that he had not argued with Appellant since the baseball incident in August of 2017.  Appellee also testified that he is the sole decision maker regarding the child's medical care and that Appellant disagrees with how much Adderall the child is taking.  Appellant does not always give the child the medication as prescribed during her parenting time.

{¶17} Appellee was asked on cross-examination if he was familiar with the Jefferson County parenting time schedule.  He stated that he was not.  When asked why he objected to modifying parenting time from the West Virginia schedule to the Jefferson County schedule he said he was not "100 percent sure what they are."  (8/14/18 Tr., p. 36.)  Appellee's attorney stated that Appellee objected to Appellant being granted any additional time.  Appellee testified that he did not want Appellant to have any additional nights because he believed she would not honor bedtime, give the child medication, or make sure homework was complete.  We note that the magistrate informed Appellee that

the local schedule was Thursday to Monday every other week, as opposed to the parties' current schedule of Friday to Sunday every other week.

{¶18} On direct examination Appellee testified that, before he was designated as the primary residential parent, the child was earning Cs in school and now the child is an A student. Appellee testified that the child has not missed any days of school since he has had custody. Appellee informed the court that Appellant continues to visit the child at school when it is not her day to parent and that after spending time with Appellant the child behaves differently toward Appellee. "How [the child] treated me, what I saw was the twins. I visioned them two walking in and treating me. [The child] treated me just like they did, just like they did." (8/14/18 Tr., p. 62.)

{¶19} Appellee also testified on direct that the child sleeps in bed with Appellant and her boyfriend every night when the child is with Appellant. Appellee told Appellant that this arrangement was inappropriate and she replied that the child was "her baby." (8/14/18 Tr., p. 64.)

{¶20} Appellant called Appellant's boyfriend to testify. The boyfriend testified Appellant does not disparage Appellee in front of the child. He also said that most of the communication about transportation for parenting time takes place via text messaging between himself, Appellant and Appellee's wife. The boyfriend acknowledged that the child sleeps in Appellant's bed every night that she has parenting time, but said that he does not sleep in the bed with them. On cross-examination he testified that he was not aware that the child went to the park alone.

{¶21} Appellant also testified. She said she has attended therapy appointments every other week for over two years. She is taking medications, including Adderall for

ADD. She agreed that the child's school performance has improved. She admitted she had made mistakes in the past but felt that she was improving with therapy. Appellant testified that she went to the child's doctor to complain about the child's prescribed dose of Adderall despite the fact that Appellee was granted all decision making authority regarding the child's medical care. She said that she never had a conversation with Appellee about the child playing violent video games and that she does not like the child to play them, either. Appellant also testified that since the last order was issued, Appellee has never complained to her about what happens during her parenting time with the child.

{¶22} On cross-examination Appellant testified that she was never diagnosed with histrionic personality disorder despite the West Virginia order determining that she had, however, she does have depression issues and ADD.

{¶23} Appellee called his mother-in-law as a witness. This witness testified that the child "comes home with an attitude, kind of rude and nasty" after spending time with Appellant. (8/14/18 Tr., p. 142.) She testified that after visiting with Appellant, the child is rude to Appellee's wife and refuses to speak to her.

{¶24} Appellee also called his wife to testify. She testified that Appellant called her names in public during the child's sports events and that Appellant took the child on vacation to South Carolina during the summer without telling Appellee beforehand. The wife testified that the child treats her differently after returning from parenting time with Appellant. She acknowledged that most of the communication between the parties occurred via text messaging. One of these communications involved an incident she found disturbing. She testified that the child brought a digital tablet to Appellee's home after visiting with Appellant. Appellee's wife noticed that Appellant's social media account

was on the tablet and available for the child to view, and that there were "adult messages" in Appellant's social media account with other individuals. The wife took pictures of these messages and sent them by text message to Appellant's boyfriend. She later met with the boyfriend to discuss this problem. She also testified that she and Appellee thought Appellant was seeking shared parenting, and not just additional visitation, according to what they were told by Appellee's attorney. (8/14/18 Tr., p. 165.)

{¶25} At the conclusion of the hearing, the magistrate took the matter under advisement. A magistrate's decision was issued on September 10, 2018. It reads, in pertinent part:

> The mother currently exercises parenting time every other weekend from Friday at 4:00 p.m. until Sunday at 4:00 p.m. The mother wants the parenting time expanded to include Thursday from 6:00 p.m. until Monday at 8:00 p.m. The father is opposed to this because of school. The father has worked a lot with the child to get him on a schedule and get his grades improved. The father is concerned that will all be for naught if the child's routine is disturbed. Consistency is a big thing with this child. The father is willing, with hesitation, to permit additional time in the summer for the mother. He does this with hesitation because of the attitude the child comes home with after spending time at the mother's home. The father does have some concerns when the child is with the mother. He cited the child going to the park without supervision and playing M rated video games. Finally, the father has issues with the mother and boundary issues.

The mother denies the child goes to the park without supervision. She denies the child plays violent video games. She denies that the father complains about any problems/concerns with the child with her. She denies any boundary issues.

The Court reviewed the factors contained in 3109.051(D)(1)-(16) of the Ohio Revised Code in deciding the case.

The Court finds that modifying the mother's Parenting Time Order is not appropriate as the Current Order is in the child's best interests.

Based upon the testimony presented, the Court finds that the best interests of the child will be served by keeping the same parenting time order.

Therefore, the Magistrate recommends the Court deny the Motion for Modification of Parenting Time. The mother will continue to exercise parenting time as previously set by the West Virginia Court Order registered with this Court.

(9/10/18 J.E.)

{¶26} On September 25, 2018, Appellant objected to the magistrate's decision, citing three reasons. First, Appellant objected to the magistrate's denial of her motion since Appellant was asking to be awarded the local standard parenting order, the presumptive minimum for Jefferson County. Second, she objected to the magistrate's denial of her motion because she allowed the child to go to the park unsupervised, as this was disputed at the hearing and no independent corroboration was provided. Third, she

Case No. 18 JE 0026

objected to the magistrate's conclusion that she would alienate the youngest child from Appellee, contending that this conclusion was not supported in the hearing. Appellee filed a response, asserting that the Jefferson County local parenting time schedule is discretionary and not mandatory. Also, since the magistrate reviewed the West Virginia order and spoke to the family court judge who adjudicated the matter in West Virginia, several findings from the West Virginia order support the Ohio court's denial of Appellant's motion. Primarily, since the Jefferson County schedule would permit almost a fifty-fifty parenting schedule, Appellee argued that this much contact with Appellant would be contrary to the child's best interest.

{¶27} In a one-page judgment entry dated December 6, 2018, the trial court concluded that Appellant's objections were overruled and adopted the magistrate's decision.

{¶28} Appellant brings this timely appeal.

<u>ASSIGNMENT OF ERROR</u>

THE MAGISTRATE ERRED IN FINDING THAT THE APPELLANT SHOULD NOT BE GRANTED THE NEW GUIDELINES OF JEFFERSON COUNTY, OHIO AND DID NOT ADDRESS ANY REASON WHY SHE SHOULD NOT BE GRANTED THE STANDARD PARENTING TIME GUIDELINES.

{¶29} In her assignment of error Appellant contends the trial court erred in not addressing any of the factors enumerated in R.C. 3109.051(D) when denying her motion for a modification of parenting time.

Case No. 18 JE 0026

{¶30} The standard of review for matters concerning visitation rights of a nonresidential parent is whether the trial court committed an abuse of discretion. *Booth v. Booth,* 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). An abuse of discretion connotes the trial court's judgment was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶31} Visitation rights for a nonresidential parent are governed by R.C. 3109.051; *Braatz v. Braatz*, 85 Ohio St.3d 40, 44, 706 N.E.2d 1218 (1999). The primary focus for the trial court is what visitation is in the best interest of the child. *Kelm v. Kelm,* 92 Ohio St.3d 223, 226, 749 N.E.2d 299 (2001). The trial court possesses the "power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." *Callender v. Callender,* 7th Dist. Carroll No. 03-CA-790, 2004-Ohio-1382, ¶ 31, quoting *Anderson v. Anderson,* 147 Ohio App.3d 513, 771 N.E.2d 303 (9th Dist.2002).

{¶32} In order to make a determination regarding whether to modify visitation when there is an existing order, the trial court must determine whether modification is in the child's best interest by utilizing the fifteen factors enumerated in R.C. 3109.051(D). *Hoppel v. Hoppel,* 7th Dist. Columbiana No. 03 CO 56, 2004-Ohio-1574, ¶15, citing *In re Ross,* 154 Ohio App.3d 1, 2003-Ohio-4419, 796 N.E.2d 6, ¶ 5 (1st Dist.). Pursuant to R.C. 3109.051(D), in determining parenting time the trial court shall consider all of the following factors: (1) the prior interaction and interrelationships of the child with the child's parents, siblings and other persons related by consanguinity or affinity; (2) the geographical location of the residence of each parent and the distance between them; (3)

the child's and parents' available time for visitation, including the parents' employment schedules, the child's school schedule and holiday and vacation schedules; (4) the age of the child; (5) the child's adjustment to home, school and community; (6) any wishes and concerns the child expressed to the court; (7) the health and safety of the child; (8) the amount of time that will be available for the child to spend with siblings; (9) the mental and physical health of all parties; (10) each parent's willingness to reschedule and accommodate the other parent's parenting time; (11) prior convictions for certain offenses or acts resulting in abuse or neglect; (13) whether a parent has willfully and continuously denied parenting time rights; (14) whether either parent has or is planning to establish a residence outside the state; and (16) any other factor in the best interest of the child. Factors (12) and (15) relate only to persons other than parents who are seeking visitation and are inapplicable here. R.C. 3109.051(D).

{¶33} In making a visitation determination based on the factors in R.C. 3109.015(D), the *Braatz* Court noted, "[t]he better practice, * * * is for the trial court, upon request by a party, to file findings of fact and conclusions of law." *Braatz* at 45. However, the *Braatz* decision does not require the trial court to issue findings of fact and conclusions of law absent such request. The Third and Fifth Districts have held that when a party does not request findings of fact or conclusions of law, the trial court is not required to do so, and without a detailed judgment entry the reviewing court must presume the regularity of the proceedings below. *Dale v. Salasek,* 5th Dist. Stark No. 2000CA00050, 2000 WL 1262601, *4; *Long v. Long,* 3rd Dist. Marion No. 9-00-58, 2000-Ohio-1801, 2000 WL 1752238, *2.

**{¶34}** Moreover, certain statutes require the trial court to issue findings of fact and conclusions of law in parental custody matters. For example, when adopting a shared parenting plan (R.C. 3109.04(D)(1)(a)(ii)) or in instances where a parent has been convicted of an abusive act which serves as the basis for an abused child adjudication (3109.051(G)(4)); or when limiting a parent's right to access a child's records (3109.051(H)(1)). There is no language within R.C. 3109.051(D) requiring such written findings. Civ.R. 52 governs the need for findings of fact and conclusions of law when not required by the particular statute being applied. *In re D.D.D.,* 7th Dist. Jefferson No. 12 JE 7, 2012-Ohio-5254, ¶ 32. Pursuant to Civ.R. 52, when questions of fact are tried by the court without a jury, a judgment may be a general one for the prevailing party unless one of the parties files a request for findings of fact and conclusions of law. Civ.R. 52. We have held that a court's duty under the rule does not arise until a timely request is made. *In re D.D.D.,* ¶ 33. However, even in instances where a party made no such request, the trial court's judgment must be supported "by some competent, credible evidence." *Smith v. Smith,* 11th Dist. Trumbull No. 2009-T-0064, 2010-Ohio-3051, ¶ 10. The judgment of the trial court must sufficiently indicate whether the trial court properly conducted a best interest analysis in order for this Court to review the matter on appeal. *In re J.K.,* 7th Dist. Carroll No. 14 CA 899, 2014-Ohio-5502, ¶ 37; *Redmond v. Davis,* 7th Dist. Columbiana No. 14 CO 37, 2015-Ohio-1198, ¶ 76-77.

**{¶35}** We begin our analysis by noting that Appellee is correct in his assertion that while Appellant requests to be granted the parenting time that is standard in Jefferson County, all determinations on this issue remain within the discretion of the trial court, and the schedule adopted by the court as its standard is not, in fact, mandatory. In the instant

case, Appellant filed no request for findings of fact and conclusions of law when objecting to the magistrate's decision. The magistrate states in its decision that it considered the factors found in R.C. 3109.051(D). Although the magistrate's decision does not set forth each factor of the statute and its application to this case, the record reflects the magistrate considered the relevant evidence presented at hearing regarding whether modification of visitation was in the child's best interest. Although the motion in limine regarding the underlying evidence which led to the West Virginia order was granted, the trial court acknowledged that the West Virginia order was pertinent. It is apparent from this order some of the issues that arose at that time have a continuing impact on the parties and their children, and the motion to modify visitation was not considered in a vacuum. Of particular relevance is the fact that Appellant alienated the two older children from Appellee as stated in the previous order. The magistrate recognized the effect the older children may have on the youngest child's behavior towards Appellee and his wife. The magistrate's decision notes that the child has "attitude" after seeing Appellant, all of which correlates to the first factor. The magistrate also stated that the child needs a consistent schedule and routine and clearly took into account factors five and seven. Both parties testified at trial that the child is performing as an A student at school. While there have apparently been no verbalized conflicts between the parties despite Appellant exercising regular visitation and even expanded visitation over the summer, there are facts in the record to support that any increased visitation on an ongoing basis into the school year is not in the child's best interests: mother appears at school in violation of the order in place, questions medical decisions, and has several boundary issues. Even absent a request for detailed findings of fact and conclusions of law, the court has demonstrated

Case No. 18 JE 0026

that it conducted a best interest analysis in making its determination based on the facts and evidence in the record.  We cannot conclude the trial court abused its discretion in denying Appellant's motion for modification of visitation when there is support in the record for the trial court's findings.

{¶36} This record does not reveal that the trial court abused its discretion in denying Appellant's motion.  Appellant's assignment of error is without merit and is overruled.  The judgment of the trial court is affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division, of Jefferson County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**