# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

MOLLY WALLER NKA MOLLY MCKIVITZ,

Plaintiff-Appellant,

v.

DARBY WALLER,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 BE 0048

---

Domestic Relations Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 25 DR 7

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Bonnie R. Conaway*, B. Conaway at Law, LLC, for Plaintiff-Appellant and

*Atty. Michael J. Shaheen*, Shaheen Law Group, for Defendant-Appellee.

Dated: April 30, 2026

**Robb, J.**

{¶1} Appellant, Molly Waller nka Molly McKivitz (Mother), appeals the trial court's August 15, 2025 judgment issued by the Belmont County Court of Common Pleas addressing a post-divorce decree motion filed by Appellee, Darby Waller (Father).

{¶2} Mother argues the trial court erred by changing the primary residential parent designation without finding a change in circumstances. She also asserts the trial court abused its discretion by changing the designation without undertaking the best interest analysis. Last, Mother asserts the court erred by changing the primary residential parent when there was no evidence to support a decision in this regard. For the following reasons, we affirm.

<u>Statement of the Case</u>

{¶3} Mother filed for divorce in January of 2025. The parties had two minor children. Father filed his answer and counterclaimed for divorce.

{¶4} After the court addressed competing motions for temporary orders and the exchange of discovery, the parties reached a settlement in April of 2025.

{¶5} The parties entered a separation agreement, which was adopted by the trial court and incorporated into the court's April 25, 2025 judgment issued after a hearing. The judgment states the parties shall participate in the Shared Parenting Plan attached as exhibit A. Among other things, the parties agreed to each claim one of the minor children for tax purposes, and once the older child is emancipated, the parties agreed to alternate years for claiming their younger child.

{¶6} Section 2.A, "Allocation of Parental Rights and Responsibilities as to Residential Status," of the Shared Parenting Plan states:

> Mother and Father shall each be designated as parent and legal guardian of the minor children. Mother shall be designated as "primary/residential" and Father as "secondary/residential," *however each parent shall be recognized as "equal"* and thus entitled to participate and consult in all major decisions affecting the welfare of the minor child[ren], including matters affecting the health, social development, morals, welfare, education and economic environment of the children. This right shall

include, but not limited to, consultation with any treating physicians, dentists, psychiatrist, psychologist, healthcare provider, teacher, counselor, tutor, coach or any other person who significantly impacts the minor child. Each parent shall immediately notify the other of any significant health problem(s) of the minor children.

(Emphasis added.) (April 25, 2025 Judgment, Ex. A.)

{¶7} Section 2.B., "Parenting Time," of the Shared Parenting Plan states in part:

The parties shall have parenting time as follows:

Father shall have parenting time each week from Tuesday (12 p.m.) to Friday (12 p.m.).

At all other times the children shall reside with Mother.

The above parenting time schedule is based upon Father's current work schedule wherein he works . . . the "Weekend Warrior" shift. . . . Furthermore, in the event Father's shift would change and subject to further Order of the Court, it is anticipated that he would still receive at least three (3) days/overnights per week, however, the actual days may conceivably change based upon a future work schedule. Both parties recognize that all child-related matters remain the jurisdiction of the Court in the event they cannot agree.

(April 25, 2025 Judgment, Ex. A.)

{¶8} The parties also agreed Father was to pay Mother child support, and Father is designated as the health insurance obligor. The parties also agreed the children would attend a private Christian school, and Father would pay Mother monthly toward tuition in addition to his support obligation. (April 25, 2025 Judgment, Ex. A.)

{¶9} Approximately one month after the court issued its decree, Father filed a post-decree motion on multiple issues. Father asked the court to hold Mother in contempt for her purposeful violations of the court's order regarding marital property; to direct her to return certain marital property to him or pay him for the value of the items; to order her to pay for damage to the former marital residence; to order Mother to pay Father's fees and costs associated with the motion; and to clarify Father's obligation to pay for the children's tuition. (June 4, 2025 Motion.)

{¶10}  The final prong of Father's motion asked the court for an order compelling Mother to become compliant with the terms and conditions of the parties' Shared Parenting Plan regarding school and medical decisions and communicating with Father. In the motion, Father alleges he "acquiesced to [Mother] being provided a 'title' as 'primary,' however, the Shared Parent Plan clearly recites that both parties are on an equal footing and are to equally share all parental rights and responsibilities. . . . The 'title' so to speak has no real applicability."  In light of Mother's noncompliance with the parties' agreement, Father also asked the court to consider naming him the primary residential parent.  (June 4, 2025 Motion.)

{¶11}  Father's affidavit in support of his motion alleges in part:

The content [of the Shared Parenting Plan] confirms that we are "equal" with regard to medical and educational decisions, however, Molly has already started her past practice of making decisions without notifying me until afterward.

I believe it is necessary that the Court clarify that simply because she demanded a title known as "primary," that in fact the terms and conditions of the Shared Parenting Plan are clear in that we "equally share all parental rights and responsibilities."

(May 30, 2025 Affidavit.)

{¶12}  Mother did not file a written opposition to Father's motion.  The court held a hearing August 5, 2025 on all issues.  Mother obtained new counsel, who entered her notice of appearance in advance of the hearing date.

{¶13}  At the beginning of the hearing, the trial court outlined its understanding of the issues before it.  The court stated in part:

And [Prong] Number Seven [of Father's motion] is for an order compelling Plaintiff to comply with the terms of the shared parenting plan, including issues regarding school decisions, medical decisions, the exchange of information and communications, and there's a mention that if these allegations are established, that perhaps the shared parenting plan should be changed so that defendant is designated as the primary residential parent.

(August 5, 2025 Tr.)  Neither side argued about or discussed the meaning or impact of the "primary residential parent" versus "secondary residential parent" designations during the hearing.  Counsel did not offer opening or closing statements.

**{¶14}**  Mother testified first on cross-examination.  Mother's testimony included her acknowledging she removed certain items from the marital home that were not listed as hers.  She claimed an air compressor, porch chairs, hunting light, weed eater, and door cameras were her "personal items."  On direct, Mother denied knowing what "personal items" meant at the time of their separation.  Mother also testified she did not deliberately take things she was not supposed to take.  She also denied destroying items and damaging the marital residence.  (August 5, 2025 Tr.)

**{¶15}**  Mother testified she did have the children on Father's Day, but that she told Father in advance they would be out of town for her brother's wedding.  She acknowledged she mistakenly planned to attend the wedding without realizing their travel day returning home was Father's Day and Father's holiday under their agreement.  Mother said the parties agreed Father would have parenting time that Monday instead as a result of her travel plans.  (August 5, 2025 Tr.)

**{¶16}**  Father testified on direct examination that many items were gone from the marital home when he gained possession of the house.  He said there were no dishes or pots remaining, and certain items were missing from his gun safe.  Father also described the toilet as purposefully damaged, holes in the carpet, and stains on the couch.  He said the house had a bad odor.  He had to stay with his parents until he could make the home habitable for him and the children.  Father also testified the house was full of garbage, and he filled several dumpsters with the trash Mother left inside.  (August 5, 2025 Tr.)

**{¶17}**  Father also testified that one aspect of his motion was about his year-round obligation to pay Mother for the children's tuition.  Father explained that Mother did not advise him that their son was awarded a scholarship or that Mother is on a monthly tuition payment plan. Had Father been aware of these things, he said it would have eliminated one aspect of his motion.  Father confirmed this is an example of things that Mother does not tell him.  On cross-examination, however, he acknowledged he could have called the school to learn about these matters.  Father also denied he was okay with "giving up" his Father's Day visit.  Instead, he testified Mother told him approximately one week before

that their children would not be in town on Father's Day. Mother did tell him he could have the following Monday instead, but Father said he did not have a choice in the matter. (August 5, 2025 Tr.)

{¶18} The court issued a limited judgment after the hearing, which stated: "Defendant's Motion heard and held for decision. Plaintiff confessed some improper conversions and agreed to their return. Plaintiff also declared her liability for Defendant's requested fees and costs. Counsel are to submit their suggested, specific resolutions on or before Friday, August 8, 2025." (August 7, 2025 Judgment.)

{¶19} Mother filed her post-hearing submission, which stated in part:

Plaintiff will provide the items she took from the home that are listed in Defendant's Exhibit 2, Page 2, Answer 2. . . . Plaintiff agrees to provide these items to Defendant as soon as possible.

Plaintiff has conceded to pay Defendant's attorney's fees in the amount of One Thousand Seven Hundred and Fifty dollars ($1,750.00.)

As for the items that Plaintiff does not have, nor did she remove or dispose of said items. . . . She believes these items are worth two-thousand dollars. ($2,000.)

(August 8, 2025 Notice.)

{¶20} Among other requests for relief, Father's post-hearing submission included the following demand:

A modification of the designation for the respective parties pursuant to the Shared Parenting Plan so as to assure that neither party is recognized as "primary," but instead both parties being recognized as "co-residential" as and for all purposes . . . This will assure that both parents will be included for all school, medical and life-affecting decisions applicable to the children.

(August 8, 2025 Memorandum of Father's Requested Relief.)

{¶21} The trial court subsequently issued its August 15, 2025 judgment and found Mother in contempt. It also held in pertinent part:

1. Plaintiff has failed to comply with the consultation, communication and/or cooperation requirements of the Shared Parenting Plan;
2. This mandates a change in designation of parental status;

Case No. 25 BE 0048

3. Plaintiff knowingly and intentionally violated the terms of the Decree of Divorce . . . by causing damage to the realty, fixtures, and personalty, prior to vacating the home. . . .

4. Plaintiff admitted her knowing and intentional removal and conversion of the personalty listed on pages 2 and 3 of Defendant's Hearing Exhibit 2. . . .

5. . . .

6. Plaintiff initially denied taking and possessing the items . . . However, her hearing testimony admitted her taking at least some tax returns and Defendant's truck key fob. Thus, her denials lack credibility;

7. . . .

8. Plaintiff's conduct . . . constitutes violations of the prior Orders in the Decree and Shared Parenting Plan Terms;

. . .

The Court Orders Defendant's Motion sustained as follows:

A. Due to Plaintiff's contemptuous violations, Defendant is now designated as the primary residential parent; Plaintiff is the secondary residential parent. The Shared Parenting Plan will otherwise be unaltered.

(August 15, 2025 Judgment.)

**{¶22}** Mother raises three assignments of error on appeal.

<u>First & Third Assignments of Error</u>

**{¶23}** We address Mother's first and third assignments of error collectively, which assert:

"[1.] The trial court committed reversible error when it failed to find a change in circumstances existed before modifying the designation of the primary residential parent because it is a modification of parental rights and responsibilities."

"[3.] The trial court's decision to change the primary residential parent designation is against the manifest weight of the evidence and abused its discretion."

**{¶24}** Mother's first assigned error asserts the trial court was required to find a change in circumstances warranting modification of the residential parent status; it was

<u>Case No. 25 BE 0048</u>

required to determine the change was in the best interests of the children; and one of the additional three factors in R.C. 3109.04(E)(1)(a) applied. Her third assignment contends there was not enough evidence offered during the hearing to support a change in circumstance finding.

**{¶25}** Father, however, asserts the trial court's decision was not a change in the designation of the residential parent. To the contrary, Father claims the court's decision merely altered a term of the parties' Shared Parenting Plan, which is governed by the lesser standard in R.C. 3109.04(E)(2)(b).

**{¶26}** Father contends this lower standard applies because the title of primary residential parent has no real effect on the parties' roles, the children's living situation, or other aspects of their lives. Instead, he emphasizes the Shared Parenting Plan's definition of them as equals remains unchanged, and the title change has no real meaning or affect since the primary versus secondary designation has no clear impact. Last, Father claims the court's findings on the other aspects of his motion support the court's judgment and its best interest determination. We agree with Father and affirm.

**{¶27}** The Ohio Supreme Court in *Fisher v. Hasenjager*, 2007-Ohio-5589, held "[a] modification of the designation of residential parent and legal custodian of a child requires a determination that a 'change in circumstances' has occurred, as well as a finding that the modification is in the best interest of the child. (R.C. 3109.04(E)(1)(a), construed.)." *Id*. at syllabus. Because both are statutorily required, a change of residential parent status without a change in circumstances finding or without a best interest analysis and determination constitutes an error of law. *Id.* at syllabus.

> R.C. 3109.04 . . . does not expressly define "residential parent" and "legal custodian." However, subsection (A)(1) states that if one parent is allocated the primary parental rights and responsibilities for the care of a child, that parent is designated the residential parent and legal custodian of the child. Therefore, the residential parent and legal custodian is the person with the primary allocation of parental rights and responsibilities. When a court designates a residential parent and legal custodian, the court is allocating parental rights and responsibilities.

A court also allocates parental rights and responsibilities when it issues a shared-parenting order. R.C. 3109.04(A)(2). A court may allocate parental rights and responsibilities for the care of a child to both parents and issue a shared-parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the child in accordance with the approved plan for shared parenting. *Id*.

If a shared-parenting order is issued and the order is silent regarding the residential parent and legal custodian status, and the context does not clearly require otherwise, then each parent is a residential parent and legal custodian of the child[.]

*Fisher*, 2007-Ohio-5589, at ¶ 23-25.

**{¶28}** The allocation of parental rights and responsibilities is the designation of the residential parent and legal custodian. Any order modifying the order designating the residential parent and legal custodian is governed by R.C. 3109.04(E)(1)(a). *Id.* at ¶ 26.

**{¶29}** If an order provides for shared parenting of a child, "each parent, regardless of where the child is physically located or with whom the child is residing at a particular point in time, as specified in the order, is the 'residential parent,' the 'residential parent and legal custodian,' or the 'custodial parent' of the child." R.C. 3109.04(L)(6).

**{¶30}** When there is no change in the residential parent status and where there is a modification of the *terms* of a shared parenting plan, the lesser standard in R.C. 3109.04(E)(2)(b) applies. *Fisher* at ¶ 26. Examples of terms of a shared parenting plan modifiable under R.C. 3109.04(E)(2)(b) include the amount of child support and which parent provides transportation. *Tonti v. Tonti,* 2004-Ohio-2529, ¶ 78 (10th Dist.); *Schoettle v. Bering*, 1996 WL 189027, *2 (12th Dist. Apr. 22, 1996).

**{¶31}** We agree with Mother that a trial court is precluded from terminating a shared parenting plan or its designation of one parent as the residential parent, without determining a change in circumstances has occurred and a finding that modification is in the best interest of the children. Yet, this is not what occurred here.

**{¶32}** As outlined in the Statement of the Case, the parties' Shared Parenting Plan states both Mother and Father are designated as parent and legal guardian of the minor children and "each parent shall be recognized as 'equal.'" Although the same Shared

Parenting Plan states Mother will be titled the "primary/residential" and Father as "secondary/residential," these titles or designations are undefined in the written agreement and are immediately followed by the statement that each parent shall be recognized as equal. The agreement then recites a non-exhaustive list of issues the parties' equal status applies to, including education, healthcare, moral issues, and so on. (April 25, 2025 Judgment, Ex. A.)

{¶33} A plain reading of their Shared Parenting Plan shows the parties are to be considered equal for all major issues concerning the children, including those listed in the agreement, despite the titles of "primary" and "secondary." Moreover, the terms "primary residential parent" and "secondary residential parent" are not used or defined in Chapter 3109 of the Ohio Revised Code, governing children and domestic relations matters. These titles are likewise not defined in the parties' agreement as giving superior status.[1] There is no indication as to why the parties included the "primary" and "secondary" residential parent designations in their agreement.

{¶34} In light of the foregoing, we conclude these designations do not affect the designation of residential parent and legal custodian—which in this case is specifically defined as equal or co-residential status.

{¶35} Consequently, because the designations of "primary residential parent" and "secondary residential parent" do not alter the parties' status as equal and co-residential parents, a change in this designation constitutes a modification of the *terms* of the Shared Parenting Plan, not a change in designation of the residential parent. Thus, a change in

---

[1] The terms "primary residential parent" and "secondary residential parent" were formerly used in Florida's statutory scheme, until their elimination in 2008. Notwithstanding, when these terms were active and applicable in Florida, one writer described the labeling system of primary versus secondary residential parent as "causing much costly litigation." Roy, *The End of Custody in Florida: Finally Parents Are Just Parents*, Fla. B.J. 49 (2008), citing Fla. Stat. §61.13 (2007) and *Watt v. Watt,* 966 So. 2d 455 (Fla. 4th D.C.A. 2007). That same article nevertheless explained the designation of primary residential parent usually referred to the parent who received child support; the primary residential parent designation did not, however, identify that parent as the "tie-breaker when there [was] an impasse as to decision making. Nothing could be farther from the truth, as shared parental responsibility requires joint decision making, and when the parties cannot agree, the dispute is brought to the court for resolution." *Id. See also Rice v. Higgins,* 2008-Ohio-2246, ¶ 2 (9th Dist.) (mentioning secondary and primary residential designations contained in a Florida court order). Regardless, there is no indication the parties to this case resided in Florida or that another state's law applies.

this regard only requires a court to determine the modification is in the best interest of the children.  *Fisher* at ¶ 19 quoting R.C. 3109.04(E)(2)(b).  Thus, Mother's first assigned error lacks merit.

**{¶36}** In light of our conclusion that the trial court did not change the residential parent designation, since each continues to be equal under Mother's first assignment, we conclude Mother's third assigned error is moot. *Cain Ridge Beef Farm, LLC v. Stubbins, Watson, Bryan & Witucky, LPA*, 2023-Ohio-4727, ¶ 52 (7th Dist.) (defining moot as having no practical effect on the dispute); App.R. 12(A)(1)(c).

Second Assignment of Error

**{¶37}** Mother's second assigned error contends:

"The trial court erred in modifying the designation of residential parents because it also failed to analyze whether it is in the best interests of the child."

**{¶38}** As stated in the prior assigned errors, the court's change in labeling Father as the "primary residential parent" and Mother the "secondary residential parent" was a change in a *term* of the Shared Parenting Plan governed by R.C. 3109.04(E)(2)(b).  It was not a change in the designation of residential parent status as Mother contends since both remain joint or co-residential parents under their agreement with equal decision-making rights.  Thus, her third assignment of error is also moot.

**{¶39}** However, because Mother's claim that the court failed to consider the best interest factors applies to R.C. 3109.04(E)(2)(b) as well, we consider her argument in this context in the interest of justice.

**{¶40}** R.C. 3109.04(E)(2)(b) states in part:

> The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree . . . upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time.  The court *shall not make any modification to the plan under this division, unless the modification is in the best interest of the children*.

(Emphasis added.)

**{¶41}** In determining the best interest of a child under R.C. 3109.04(E)(1)(a), a trial court must consider all relevant factors found in the nonexclusive list in R.C.

3109.04(F)(1). The factors include, but are not limited to, the wishes of the parents; the children's adjustment to the homes, school, and community; the mental and physical health of the children and parents; the parent more likely to honor and facilitate court-ordered parenting time rights, visitation, and companionship; the payment of child support obligations; and whether either parent willfully denied the other's right to parenting time. R.C. 3109.04(F)(1).

**{¶42}** In weighing these best interests factors, no one factor is dispositive and the trial court has discretion determining which factors are relevant. *In re J.K.*, 2014-Ohio-5502, ¶ 23 (7th Dist.); *Hammond v. Harm,* 2008-Ohio-2310, ¶ 51 (9th. Dist.). And absent evidence to the contrary, an appellate court should presume a trial court considered all the relevant best interest factors. *Krill v. Krill*, 2014-Ohio-2577, ¶ 29 (3d Dist.).

**{¶43}** Although R.C. 3109.04 identifies various factors for a trial court to consider when exercising its discretion and making a best-interest determination, the statute contains no requirement that a court must enunciate its best interest analysis, findings, or determination. *In re J.K.*, 2014-Ohio-5502, ¶ 31 (7th Dist.). Certain courts have held a trial court is presumed to consider the factors absent evidence to the contrary. *Id.; Doane v. Doane*, 2001 WL 474267, *6 (5th Dist. May 2, 2001) ("a silent record raises the presumption that a trial court considered the factors."); *Palichat v. Palichat*, 2019-Ohio-1379, ¶ 28 (2d Dist.).

**{¶44}** Moreover, when questions of fact are tried by the court without a jury, a judgment may be general unless one of the parties files a request for findings of fact and conclusions of law. *Matter of J.L.C.*, 2019-Ohio-2721, ¶ 34 (7th Dist.); Civ.R. 52. A court has no duty to issue findings of fact unless a timely request is made. *In re D.D.D.*, 2012-Ohio-5254, ¶ 33 (7th Dist.). When a statute is silent on the issue, the need for findings of fact and conclusions of law is governed by Civ.R. 52. *Id*. at ¶ 32.

**{¶45}** Yet, this court has noted even where there is no request, the trial court's judgment must be supported "by some competent, credible evidence." *Matter of J.L.C.*, 2019-Ohio-2721, ¶ 34 (7th Dist.), citing *Smith v. Smith,* 2010-Ohio-3051, ¶ 10 (11th Dist.).

**{¶46}** "[W]here a [determination] is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence." *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23 (1990) (addressing best

interest factors in an appeal from an award of custody). Our role is not to weigh the evidence, but to determine whether there is competent evidence to sustain the trial court's findings. *Id.* "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court . . . should be guided by the presumption that the trial court's findings were indeed correct." (Citations omitted.) *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

{¶47} Here, neither party filed a request for findings of fact and conclusions of law. Therefore, the trial court was not required to detail findings outlining its consideration of the best interest factors for changing the secondary and primary residential parent designations. Nevertheless, a review of the trial court's judgment shows its decision was supported by some competent, credible evidence.

{¶48} As stated, the trial court found in part Mother "failed to comply with the consultation, communication and/or cooperation requirements of the Shared Parenting Plan; . . . This mandates a change in designation of parental status; . . . [Mother also] knowingly and intentionally violated the terms of the Decree of Divorce, which terms she agreed to, by causing damage to [the marital home] prior to vacating the house." (August 15, 2025 Judgment.) Mother does not challenge these determinations. Instead, her argument focuses on the court's lack of reference to the "best interest" of the children; lack of pronouncement that it considered the statutory factors; and the lack of change of circumstance supporting a change in residential parent status.

{¶49} As advanced by Father, the trial court determined Mother's inability to comply with the court's orders, including her deliberate taking of his property and damage to the residence he was to use for the children's home, plus her disregard for his Father's Day holiday less than a month after the court granted the parties a divorce, demonstrate some evidence supporting its decision.

{¶50} The court found Mother failed to comply with its orders as to the trial court's parenting time and other aspects of the decree. The court also found some of her conduct was deliberately contrary to certain aspects of the parties' agreement. Specifically, the trial court considered the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights under R.C. 3109.04(F)(1)(f),

as well as the fact that Mother damaged the residence intended for Father and the minor children, and disregarded the court's orders. The court was only required to consider the relevant factors. *Id.* The record supports the court's findings in this regard. Moreover, there was no change in the designation of residential parent; the parties remain equal co-residential parents pursuant to their agreement.

**{¶51}** Thus, the trial court considered the factors it determined were relevant, and as such, the trial court's decision is supported by competent, credible evidence. Mother's second assigned error lacks merit.

Conclusion

**{¶52}** Based on the foregoing, each of Mother's assignments of error lacks merit. The trial court's judgment is affirmed.

Waite, P.J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**